John Carl CLOAR, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Court of Appeals of Kentucky.

June 29, 1984.

Discretionary Review Denied by
Supreme Court Dec. 13, 1984.

Charles M. Chaney, Paducah, for appellant.

David L. Armstrong, Atty. Gen., K. Gail Leeco, Asst. Atty. Gen., Frankfort, for appellee.

Before DUNN, GUDGEL, and WHITE, Judges.

GUDGEL, Judge.

This is an appeal from a judgment entered by the Graves Circuit Court. Pursuant to a jury's verdict, the court adjudged appellant guilty of the offenses of receiving stolen property, terroristic threatening, resisting arrest, and wanton endangerment. On appeal, appellant contends that the court erred (1) by failing to suppress evidence illegally seized from an area within the curtilage of his dwelling, (2) by failing to dismiss the charges against him because they resulted from an illegal search and illegal arrest, (3) by commenting on the exercise of his right to remain silent, and (4) by permitting a prosecution witness to testify to out of court statements made by other prosecution witnesses. We disagree with all of appellant's contentions. Hence, we affirm.

On December 31, 1982, Phillip Pate, a deputy sheriff for Graves County, went to the Gerald Gravitt home to talk to Gravitt in connection with Pate's investigation into the theft of a chainsaw. He parked in the driveway which runs along the side of the residence. After knocking on the front and back doors of the home and receiving no answer, Pate saw a cabin sitting on a lake further down the driveway. Smoke was coming out of its chimney. Thinking Gravitt might be there, Pate drove on to the cabin. He knocked on the back door but no one answered. He then went around to the front door, which faced the lake, and observed that it was padlocked. As he was coming back around the cabin to his car, he noticed a plastic cover for a three-wheel motorcycle lying near the chimney. He also observed that the left fender of the cover had been broken but plastic-welded back together. Pate determined that the motorcycle cover fit the description of one which had been reported stolen by an Eddie Ramsay a few months previously. He therefore took possession of the plastic cover and placed it in his car.

He then proceeded to the Ramsay home. Mrs. Ramsay identified the plastic cover as belonging to a 1982 ATC Honda 110 three-wheel motorcycle which had been stolen from their shed on November 20, 1982. Pate returned to the sheriff's office. At 3:00 p.m., he learned that the cabin behind the Gravitt residence was occupied by appellant and a Connie Glisson. Pate signed an affidavit for a search warrant, and a district judge issued a warrant which permitted the search of the cabin "including all rooms, attics, basement, closets, and storage areas ... together with surrounding grounds, outbuildings, and vehicles on said premises," for a Honda three-wheeler with parts and accessories. At 12:20 a.m., January 1, 1983, Sheriff Burl Youngblood, Deputy Pate, Deputy Bill Joiner, and Special Deputy Don Williams went to the cabin to execute the search warrant. They were admitted by Connie Glisson. From that point on, the versions of what happened conflict sharply.

According to the officers, the search warrant was read to both Glisson and ap-

pellant. They were also read their *Miranda* rights. Glisson told the officers that Sonny and Tammy Watts had ridden the Honda 110 and a Honda 185 to the cabin, that Sonny had taken the plastic body off and left it there, and that Sonny had said both bikes were stolen. Appellant said, "Now you've opened your mouth," but did not make any further statement. As the search began, appellant became more and more outraged. He cursed and called the officers "pigs."

As they were searching a particular room, appellant came lunging at them. Sheriff Youngblood caught him, sat him down, and told him he was under arrest for disorderly conduct "because it looks like we are not going to be able to make a search without it." Appellant then made a run for the door and a fight started. Appellant, hitting and kicking, threatened to kill them. He also tried to disarm Special Deputy Williams and made repeated attempts to reach the door and the couch by the door. The officers later found a loaded .410 gauge shotgun under the couch. During the fight, Deputy Pate hit appellant once or twice with his slapjack. After about twenty to thirty minutes, appellant was subdued, handcuffed, and placed in a cruiser.

According to appellant, he and Glisson were asleep when the officers arrived. The search warrant was read but the sheriff only flashed it when appellant asked to see it. Moreover, appellant claimed he did not become outraged until one of the officers slapped a beer out of his hand saying, "Son, I believe you've had too much to drink." He was attempting to leave to tell his daddy about the search when an officer made a derogatory, vulgar remark about his father, and the fight was on. Appellant claimed he was hit with a baseball bat during the fight and was never told he was under arrest for anything.

On the morning of January 1, 1983, appellant was released on bond. That afternoon, appellant's mother called the sheriff. The sheriff testified that appellant's mother told him that she had been out walking

and had noticed a three-wheel motorcycle in the ditch midway between her house and the cabin and that it had been ridden or thrown into the ditch that morning. After the motorcycle was removed from the ditch, Eddie Ramsay identified it. On January 6, 1983, Sonny Watts gave a statement to police indicating that he had stolen the motorcycle from the Ramsays and had sold it to appellant for $200.

Appellant was indicted for wanton endangerment in the first degree, assault in the third degree, resisting arrest, harassment, terroristic threatening, and receiving stolen property. Before trial, the court dismissed the assault and harrassment charges for reasons which are not pertinent to this appeal. After a jury trial, appellant was convicted of the remaining charges. This appeal followed.

First, appellant contends that the plastic body of the motorcycle was illegally seized from the curtilage of his residence. He argues, therefore, that the court erred by refusing to suppress the body and all other evidence obtained as a result of its seizure. We disagree. True enough, as appellant argues, this jurisdiction adheres to the doctrine that the curtilage of a dwelling ordinarily may not be searched without a search warrant. *Fugate v. Commonwealth*, 294 Ky. 410, 171 S.W.2d 1020 (1943). This doctrine is an exception to the general rule which permits open fields to be searched even if a civil trespass is involved. *Maddox v. Commonwealth*, Ky., 503 S.W.2d 481 (1973). However, under the "plain view" doctrine, the police may make a warrantless seizure of property which is contraband or evidence of a crime even if the object seized is situated in a protected area. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Caine v. Commonwealth*, Ky., 491 S.W.2d 824 (1973).

The rule which has evolved is that, if a police officer is lawfully engaged in an activity in a particular place and inadvertently observes an object in plain view that

he or she has probable cause to associate with criminal activity, the officer may seize the property without a warrant. Such a seizure is not infirm under either the United States or Kentucky Constitutions. *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Caine v. Commonwealth, supra.*

Thus, the issues before us are whether deputy sheriff Pate was lawfully entitled to be within the curtilage of appellant's cabin at the time he observed the stolen plastic cover and whether he had probable cause to believe that it was stolen. If we resolve these issues in the affirmative, then the seizure of the stolen plastic cover was legal and all evidence obtained as a result of its seizure admissible.

The question of whether, in furtherance of a legitimate criminal investigation, a police officer has a legal right to enter the driveway of a residence and knock on its doors while attempting to find and talk to the occupant of the residence has never been addressed by our courts. Other jurisdictions, however, have addressed the issue.

In *Pistro v. State,* 590 P.2d 884 (Alaska 1979), an officer could not see inside the garage of a house from the street. He was in the process of investigating a tip that items from a stolen truck were in the garage. He walked up the driveway of the residence to the garage and observed the stolen items inside after someone opened the door. The defendant argued that the officer conducted an illegal search of the garage. In rejecting this argument, the court said:

> The driveway was a normal means of ingress and egress impliedly open to public use by one desiring to speak to occupants of the garage, or to park off the street while visiting occupants of the house. This is not a case of an officer leaving such a means of public access to spy from an area not impliedly open to the public. There was no invasion of rights to privacy, and Officer Wodrich could constitutionally observe what was in plain view in the garage.

In *State v. Seagull,* 26 Wash.App. 58, 613 P.2d 528 (1980), a sheriff's deputy was dispatched to a rural area near the defendant's home to investigate a blood-stained vehicle. He went to several residences in the area to question the occupants to determine whether they knew anything about it. When he arrived at the defendant's house, he parked in the drive, knocked on the door and, when he got no answer, headed for a rear door. He passed near an adjacent greenhouse and observed what he thought were marijuana plants growing inside. Abandoning his efforts to talk to the occupants, he left and obtained a search warrant. When the warrant was served, 60 marijuana plants were found. In answering the defendant's contention that the officer did not have a right to be where he observed the plants, the court said:

> It is undisputed from the record, and the trial court found, that Sergeant Talvi entered upon the premises in pursuit of a legitimate police investigation or inquiry. His purpose was to question the occupants about the abandoned vehicle and its occupants. This he had the right to do, .... Clearly the front porch, driveway and parking area were within that portion of the premises to which the public, including police officers on legitimate business, are impliedly invited by the owner, and in which the owner has a lesser expectation of privacy.... The same is true of the unenclosed, unimproved side yard or walkway between the house and outbuildings leading to the rear of this rural home.... In our view it would be extremely unrealistic to require Sergeant Talvi to walk a tightrope on his way to the rear of the premises in furtherance of his quest for the owners of the house.

In *State v. Crea,* 305 Minn. 342, 233 N.W.2d 736 (Minn.1975), officers acting on a phone tip in regard to a stolen trailer and snowmobiles went to a private residence at 5:25 a.m. They walked down the driveway toward the house and, by using their flashlights, observed a trailer which met the description of the stolen one. They then

shined their flashlights into the window of the walk-in basement door and observed the stolen snowmobiles. In answering the defendant's contention that the officers conducted an illegal search, the court said:

Although the Fourth Amendment refers only to "persons, houses, papers and effects," courts generally have held that it applies also to the "curtilage," which is the area adjacent to a house and includes the garage....

But this does not mean that absent special circumstances police may never go on the curtilage without a warrant. Courts have held that police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public. Thus, police may walk on the sidewalk and onto the porch of a house and knock on the door if they are conducting an investigation and want to question the owner, and in such a situation the police are free to keep their eyes open and use their other senses....

■ In conformity with these authorities, we hold that a police officer in the furtherance of a legitimate criminal investigation has a legal right to enter those parts of a private residential property which are impliedly open to public use. We limit the permissible scope of this right, however, to driveways, access roads, and as much of the property's sidewalks, pathways, and other areas as are necessary to enable the officer to find and talk to the occupants of the residence. We fail to perceive that such a rule sanctions an unreasonable invasion of privacy. After all, there is nothing unreasonable about a person in broad daylight openly and peacefully walking up to the door of a residence with the honest intent of asking questions of the occupant. Whether that person happens to be "a pollster, a salesman, or an officer of the law" should be of no significance. *See Davis v. United States*, 327 F.2d 301 (9th Cir.1964).

■ Here, it is undisputed that deputy Pate entered the driveway next to the Gravitt home for the sole purpose of talking to Gravitt about a stolen chainsaw. There was nothing to indicate to him that the driveway which continued on to appellant's cabin was on different property. Because he saw smoke coming from the cabin's chimney, it was not unreasonable for him to believe that Gravitt might be there. Further, there was nothing to indicate that the areas within the curtilage of the cabin through which he passed in order to knock on the front and back doors were not impliedly open to his use. While in good faith exercising his legal right to use these areas, he inadvertently observed in plain view a motorcycle cover which fit the description of one which had been reported stolen. He had probable cause to believe that it was the stolen cover because of the peculiar plastic weld in its left fender. Because officer Pate was lawfully at the place where he observed the stolen motorcycle cover and had probable cause to believe that it was stolen, he legally seized it from the curtilage of appellant's cabin. *Texas v. Brown, supra*. The court, therefore, did not err by denying appellant's motion to suppress the evidence obtained as a result of its seizure.

In light of this determination, appellant's contentions that the subsequent search of his cabin pursuant to the search warrant and his subsequent physical arrest were also illegal are without merit.

■ Next, appellant contends that the court improperly commented on his exercise of his right to remain silent. We disagree. The comment complained of occurred when the court ruled on an objection to testimony as to what Connie Glisson told the officers in appellant's presence. The court stated only that appellant was present when Glisson made the statement and that the statement therefore was admissible. We fail to perceive that the court's ruling on the objection to the proffered evidence amounted to an improper comment on appellant's right to remain silent.

■ Finally, appellant argues that the court committed prejudicial error by permitting officer Pate to testify that the Ramsays had reported the motorcycle to be

stolen. The Ramsays, however, also testified at trial as to the matters related by Pate. Therefore, even if the court did err by admitting Pate's testimony as to what the Ramsays reported or may have told the police, the error was harmless.

The judgment is affirmed.

All concur.