COMMONWEALTH of
Kentucky, Appellant,

v.

Pierre Lamont ELLIOTT, Appellee.

Court of Appeals of Kentucky.

Aug. 1, 1986.

David L. Armstrong, Atty. Gen., David A. Bybee, Sp. Asst. Atty. Gen., Louisville, for appellant.

Thomas E. Clay, P.S.C., Louisville, for appellee.

Before LESTER, McDONALD and REYNOLDS, JJ.

LESTER, Judge.

This is an appeal by the Commonwealth from an order which suppressed certain evidence seized in a warrantless search of appellee's residence. The appellant argues that the search was permissible as falling within an exception to the warrant requirement.

The appellee, Pierre Elliott, was on parole from a 1984 manslaughter conviction. His probation officer was Leonard Gardenour. As a parolee, Mr. Elliott was not to leave Jefferson County without the permission of his parole officer.

In February of 1985, Mr. Gardenour apparently received information from a confidential informant that the appellee had been going out of state for the purpose of obtaining drugs for sale in Louisville. According to the informant, Elliott had recently returned from a trip and possessed a large quantity of cocaine. It was also disclosed that appellee had received a traffic citation on one of these trips in Alabama, which Mr. Gardenour confirmed was true.

Based upon the above information, Gardenour, another probation officer, and two police officers went to the home of Rosetta Palmer, Elliott's sister, with whom the appellee was residing. Although they had no arrest warrant, a parole officer is authorized by statute to make an arrest upon a reasonable belief that the parolee has violated the terms of his release. KRS 439.-430. The officers knocked on the door and were permitted entry by Ms. Palmer. Thereupon, they immediately arrested Mr. Elliott.

After securing custody of the appellee, Mr. Gardenour and some of the others looked throughout the rest of the house, apparently on the basis of information that Elliott might have an accomplice. Gardenour testified that in checking the rooms, he saw on a table in Elliott's bedroom, a set of scales, a packet of white powder, a razor blade and plastic bottles filled with white powder. The officers thereafter obtained a consent to search the premises from Ms. Palmer. A further quantity of drugs was then seized.

On February 7, 1985, Elliott was charged with trafficking in a controlled substance and PFO I. However, the indictment was dismissed following the court's order suppressing the evidence. The Commonwealth's first argument on appeal is that the initial search of the residence was merely a "protective sweep" or "safety check" of the premises.

This type of search has been upheld in several courts in circumstances in which the police officers have reasonable grounds to believe that they may be in danger from areas not in the immediate vicinity of a

defendant. The Supreme Court, in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), specifically recognized the officers' right to conduct a warrantless search of the physical area within the defendant's immediate control. Many state courts and lower federal courts have interpreted *Chimel* in a fairly loose manner, upholding searches outside of the defendant's "reach" area, in the interest of safety of the police officers. However, to date, the Supreme Court has refused to extend the "search incident to an arrest" exception to areas outside the immediate vicinity of the arrest.

■ Thus, the Commonwealth urges us to follow the lead of the Sixth Circuit Court of Appeals in recognizing the "protective sweep" exception to the warrant requirement. We have examined several cases from that Court and conclude that even if the "safety check" exception is adopted, there must be a "serious and demonstrable potentiality for danger." *U.S. v. Morgan*, 743 F.2d 1158, 1163 (6th Cir.1984). The burden is on the government to prove that officers had probable cause to believe a serious threat of danger existed. *U.S. v. Kolodziej*, 706 F.2d 590, 597 (5th Cir.1983).

■ In all of the cases cited by the appellant, officers had articulable facts which reasonably warranted the intrusion. The record in this case reveals no such immediate threat or security risk to the officers involved here. The parole officer testified that he had no information that Elliott's alleged "accomplice" was in the house, that Elliott was armed or had any weapons in the house, or even that there were controlled substances in the house. Mr. Elliott offered no resistance to the arrest and the officers admittedly had several days to obtain a search warrant prior to making the arrest. We believe that based on the totality of the circumstances, the trial court was correct in concluding that the warrantless intrusion did not fall within the protective sweep exception. *See U.S. v. Hatcher*, 680 F.2d 438, 444 (6th Cir.1982); *U.S. v. Killebrew*, 560 F.2d 729 (6th Cir.1977).

■ The Commonwealth next argues that if the safety check or protective sweep exception is not available, the seized drugs should not be excluded as their discovery was inevitable. In *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Supreme Court held that unlawfully obtained evidence will be admissible if ultimately, or inevitably, it would have been discovered by lawful means. The rationale behind the rule is that it does not put the police in a better position than they would have been absent the error, but only puts them in the same position as if there had been no unlawful search. *Nix, supra,* 467 U.S. at 443, 104 S.Ct. at 2509, 81 L.Ed.2d 377 at 387. If the prosecution can establish by a preponderance of the evidence that the items would have ultimately been discovered by lawful means, the deterrence rationale has so little basis that the evidence should be received. *Id.* 467 U.S. at 445, 104 S.Ct. at 2510, 81 L.Ed.2d at 388.

■ In the case at bar, the Commonwealth presented evidence at the hearing that it was necessary for officers to go into Mr. Elliott's room to get a shirt, shoes, and socks for him prior to taking him to the station. As this was the room in which the drugs were seen in plain view, it is asserted that their discovery was inevitable.

We cannot agree that the facts of this case fall within the inevitable discovery exception. In *Nix, supra,* law enforcement officials were in the process of a massive search for the body of a missing child, when they elicited an incriminating statement from the defendant in violation of his Sixth Amendment right to counsel. At trial, evidence of the body's location and condition when discovered was permitted on the basis that the body would have been discovered in a short time, without the statements of Williams. *Id.* 467 U.S. at 437, 104 S.Ct. at 2506, 81 L.Ed.2d at 383. However, the statements themselves were not offered into evidence.

We are unaware of any authority in support of the parole officer's right to go to a room outside the area of the arrested par-

ty's control to get clothing for the parolee. To extend the inevitable discovery rule to circumstances such as exist here would open the door to virtually every pretext for upholding an unlawful search. Quite simply, we believe the trial court correctly concluded that the prosecution could not prove by a preponderance of the evidence that the drugs seized would have been ultimately discovered by lawful means. *Id.* 467 U.S. at 443, 104 S.Ct. at 2509, 81 L.Ed.2d at 387; *U.S. v. Owen,* (E.D. Mich) 621 F.Supp. 1498 (1985).

█ Since we have determined that officers were not permitted to search the bedroom without a warrant, under either a "safety check" exception or the "inevitable discovery" doctrine, the plain view doctrine cannot be relied upon. In order for a plain view seizure to be upheld, police must be lawfully conducting a search or have a right to be at the point where the observation is made. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Cloar v. Commonwealth,* Ky.App., 679 S.W.2d 827 (1984).

█ Neither does the consent to search form signed by appellant's sister after Mr. Gardenour discovered the contraband in the bedroom, operate to transform the search into a legal one. While it would appear that Ms. Palmer had sufficient authority over the premises to grant consent to a search, that consent should have been obtained prior to the search being conducted. *McQueen v. Commonwealth,* Ky., 669 S.W.2d 519 (1984), *cert. den.,* 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). As the trial court held, the consent was obtained on the basis of the evidence already discovered in the impermissible search; hence, it was the "fruit of the poisonous tree" and evidence obtained thereunder must be excluded. The unlawful activities cannot be justified by the belated actions of the police.

This brings us to the final assertion of the Commonwealth, namely, that the conduct herein falls within the good faith exception to the exclusionary rule. *U.S. v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984); *Segura v. U.S.,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). We disagree. Having examined the good faith exception cases cited herein, we cannot justify application of that exception to the warrantless search conducted in this case.

*Leon, supra,* held that the fourth amendment exclusionary rule should not be utilized to bar use of evidence obtained in reasonable reliance upon a search warrant later found to be invalid. In *Sheppard, supra,* there was a reasonable basis for the officers' belief that a defective search warrant authorized their actions. Here, it is undisputed that the officers did not have a search or arrest warrant, nor were they in the process of obtaining one based upon information known prior to the search. *See Segura, supra,* 104 S.Ct. at 3383. It is also undisputed that a search warrant could have been easily obtained in the three day interval between the parole officer's receiving the information and the actual arrest. *U.S. v. Morgan, supra.*

It has been said that the substantial societal costs exacted by the exclusionary rule are becoming a source of great concern. *Leon, supra,* 468 U.S. at 907, 104 S.Ct. at 3413, 82 L.Ed.2d at 688. Where application of the rule can be said to have no deterrent effect, the courts have begun modifying the rule to permit introduction of evidence obtained in the reasonable good-faith belief that a search was lawful. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

█ However, the balancing approach that has developed as to the costs versus the benefits has not been extended to situations such as exist here. The courts have adhered to a strong preference for warrants absent some exigency which makes it unreasonable to delay. *Leon, supra,* 468 U.S. at 914, 104 S.Ct. at 3417, 82 L.Ed.2d at 693. Officers are required to have a reasonable knowledge of what the law prohibits, and we believe the value of the

exclusionary rule as an incentive for the law enforcement profession to conduct themselves in accord with the Fourth Amendment still remains, at least in regard to warrantless searches of a private residence.

For all of the foregoing reasons, we conclude that the trial judge properly suppressed the evidence seized in this impermissible search. The order is therefore affirmed.

REYNOLDS, J., concurs.

McDONALD, J., dissents.

McDONALD, Judge dissenting:

I dissent because it was error, in my opinion, for the trial court to suppress the evidence. I believe the actions of the parole officer must be examined step by step to determine if such actions were reasonable, and if reasonable, Pierre Lamont Elliott's constitutional rights were not violated.

In the first place, was the parole officer legally in the residence of Elliott's sister where Pierre Elliott lived? His status there is undisputed. He had permission to enter the home from the sister and, regardless, he had a statutory right to make a warrantless arrest under KRS 439.430.

Keep in mind that the parole officer is not functioning as a police officer. Elliott was a parolee under supervision and the officer had unquestioned probable cause to believe Elliott was violating the conditions of his parole.

Secondly, Pierre Elliott was arrested in the kitchen area of the home and then taken to the living room. The officer had information that a female, Yvette Miles, was helping Elliott in selling drugs and that she might be at the house. The officer's informant was not sure whether Elliott or Miles was armed. But knowing Elliott's violent tendencies, Elliott having killed before, the officer was prepared for the worst.

In the process of making a "safety sweep" of the premises for the officers'

own protection because accomplices might be hiding therein, the officer saw drugs and paraphernalia on a small table in Elliott's bedroom in plain view.

In my opinion, this was not a search as such is defined in *Nichols v. Commonwealth*, Ky., 408 S.W.2d 189 (1966).

I would reverse the order of the circuit court and permit the evidence to be used against Elliott. His constitutional rights have not been abused.