**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

LEE ARTHUR TUCKER,

    Defendant-Appellant.

No. 98-6002
(D.C. No. 96-CR-108)
(W. Dist. Okla.)

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, Chief Judge, **BARRETT**, and **TACHA,** Circuit Judges.

Lee Arthur Tucker entered a conditional guilty plea to one count of possession with intent to distribute crack cocaine.  He appeals the denial of a motion to suppress evidence procured from a search of his residence.  We affirm.

On May 15, 1996, a team of FBI agents and Oklahoma City Police officers arrived at Mr. Tucker's residence to serve an arrest warrant on him.  The arrest team was one of several such teams serving warrants on members of a large scale drug conspiracy.  Officers were told that the suspects had a history of violent

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

behavior and were known to have firearms. When Mr. Tucker appeared at the front door, he was instructed to open the locked metal-barred door. He disappeared from sight when he went in search of the key.

The officers heard rustling noises when Mr. Tucker was out of sight but could not determine if there were other individuals inside the residence. Mr. Tucker finally returned and unlocked the door. Officers ordered him to lie down and began taking him into custody while several other officers began a protective sweep of the residence for other individuals who might pose a danger. In one room, the officers moved a sofa out from the wall but found no one hiding there. Instead, they observed a pile of cocaine. On the kitchen counter, the agents observed a set of scales, a razor blade, an ammunition clip, and a residue of white power. They discovered a sleeping infant in the master bedroom and a bulletproof vest on a shelf in the master bedroom closet. They did not touch, move, or seize these items. They completed the protective sweep and removed Mr. Tucker to their vehicle.

The officers contacted Mr. Tucker's sister-in-law and waited for her to arrive to take custody of the sleeping infant. Meanwhile, Agent Tsiumis left the scene to obtain a search warrant, based in large part on the evidence observed during the sweep.

In a denial of a motion to suppress, we accept the trial court's findings of

fact, unless clearly erroneous, and consider the evidence in the light most favorable to the government. The reasonableness and scope of the search are matters of law we review de novo. *United States v. Smith*, 131 F.3d 1392, 1396 (10th Cir. 1997). The Fourth Amendment allows officers conducting an in-home arrest of an individual to conduct a warrantless protective search of that dwelling when they have a reasonable suspicion that "the house is harboring a person posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 336 (1990); *United States v. Flores*, 149 F.3d 1272, 1278 (10th Cir. 1998). The Supreme Court held in *Buie* that it was not necessary for officers to show "probable cause to believe that a serious and demonstrable potentiality for danger existed." 494 U.S. at 336. An officer must instead possess a "reasonable belief based on specific and articulable facts" that there might be such a threat. *Id.* at 337. In evaluating the threat, the Court considered the disadvantage officers faced in being "ambushed" in the confined setting of the arrested suspect's home. *Id.* at 333.

While a protective sweep is necessary for the safety of the arresting officers and others at the scene, the Court also recognized it is an intrusive act that should be limited in its scope. *Id.* at 333-34. It must be "narrowly confined to a cursory visual inspection of those spaces where a person might be hiding," *id.* at 327, and should last "no longer than is necessary to dispel the reasonable suspicion of

danger and in any event no longer than it takes to complete the arrest and depart the premises," *id.* at 335-36.

Mr. Tucker first contests the propriety of the protective sweep. He argues that since he was already arrested, the officers had no reason to fear for their safety. However, the Supreme Court in *Buie* was "quite sure" that officers were permitted to take steps to ensure their safety both "after, and while making, the arrest." *Id.* at 334.

Relying on *United States v. Hogan*, 38 F.3d 1148 (10th Cir. 1994), Mr. Tucker contends the officers had no specific and articulable facts to support a reasonable belief that the residence harbored any other individual posing a danger to the officers or others. *Hogan* is inapposite to our case. The defendant there was arrested outside his home, and the police collected evidence for two hours during the "sweep." *Id.* at 1150. In that case, we were not convinced that the sweep was conducted to protect the officers. *Id.* By contrast, the district court here found that the protective sweep lasted well under five minutes. The district court also found that the officers were told the numerous suspects in the alleged conspiracy had a history of violent behavior and were known to possess firearms. Moreover, the court found that Mr. Tucker took an unusually long time out of the officers' sight when he was searching for the keys, and that the rustling noises could have suggested to the officers that someone else was in the dwelling. We

are persuaded these facts supported a reasonable belief of a risk of ambush, and therefore justified a protective sweep.

Second, Mr. Tucker contends the scope of the sweep was improper. He argues that the evidence found from moving the couch should be suppressed because no person could have fit behind the couch. The district court found that "the officers didn't do anything more than look about in places where a human being could be. And they are entitled to look in a closet or open a bathroom door or look behind a bulky piece of furniture." Aplt. App., vol. I, at 85. We cannot say that the district court was clearly erroneous in determining that the couch could have hidden a potential threat.

The resulting search warrant was based on the protective sweep. Since we conclude that the protective sweep was proper, we decline to further address the validity of the search warrant. After reviewing the record, we hold that the district court properly denied Mr. Tucker's motion to suppress. Accordingly, we **AFFIRM** the district court.

ENTERED FOR THE COURT

Stephanie K. Seymour
Chief Judge