**Randy BRUMLEY, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2012–SC–000189–DG.**

Supreme Court of Kentucky.

Nov. 21, 2013.

---

Emily Holt Rhorer, Assistant Public Advocate, for Appellant.

Jack Conway, Attorney General, Christian Kenneth Ray Miller, for Appellee.

Opinion of the Court by Justice CUNNINGHAM.

In the spring of 2009, Clinton County Sheriff Ricky Riddle made several unsuccessful attempts to execute a felony arrest warrant on Appellant, Randy Brumley, for possession of a controlled substance. On May 29, Sheriff Riddle received a tip that Brumley was present at his mobile home located on the outskirts of Clinton County. This was not Brumley's primary residence. The record indicates that he was in the process of renovating the trailer and only stayed there occasionally because there had been some break-ins. Sometime around midnight, Sheriff Riddle, along with law enforcement officers from different state and local agencies, surrounded Brumley's mobile home to execute the felony arrest warrant. After Sheriff Riddle knocked on the door and informed Brumley of the warrant, Brumley cooperated by stepping outside. None of the officers ever asked Brumley if other individuals were inside the trailer. The trailer did not have a porch, overhang, or any other enclosure. Once Brumley cleared the threshold and descended the adjoining steps, he was totally clear of the trailer. Sheriff Riddle then began to place Brumley under arrest and search him. The search occurred near Brumley's truck which was parked several feet from the trailer. Brumley was unarmed. He did possess a pipe and aluminum foil which later tested positive for methamphetamine residue. This charge is; not a part of this appeal.

Prior to the trip to Brumley's trailer, at least one officer had received information that Brumley might have guns inside the residence. While Brumley was being led away from the trailer, some of the officers heard what they described as a "rustling" or "shuffling" noise coming from inside the residence. In response, several officers entered the residence to perform a "protective sweep." Once inside, they discovered that a dog was the source of the noise. They also observed several components used in the manufacture of methamphetamine.

As a result, Brumley was charged in the Clinton Circuit Court with manufacturing methamphetamine and possession of drug paraphernalia. Prior to trial, Brumley filed two sequential motions to suppress evidence. The first contended that the warrantless search of his mobile home was illegal. The second argued that the Commonwealth did not establish the proper chain of custody for the evidence seized from the home. Both motions were denied. The charges went to trial on July 16, 2010. The jury found Brumley guilty of manufacturing methamphetamine and possession of drug paraphernalia, and he received a sentence of ten years incarceration. The Court of Appeals affirmed and we granted discretionary review. After reviewing the record and the law, we reverse and remand this case to the trial court for further proceedings consistent with this opinion.

### PROTECTIVE SWEEP

Our standard of review of the trial court's denial of a suppression motion is twofold. First, the trial court's findings of fact are conclusive if they are supported by

substantial evidence; and second, the trial court's legal conclusions are reviewed de novo. *Commonwealth v. Marr*, 250 S.W.3d 624, 626 (Ky.2008); Kentucky Rules of Criminal Procedure (RCr) 9.78.

▮ The Fourth Amendment to the U.S. Constitution, made applicable to the states through the Fourteenth Amendment and Section 10 of the Kentucky Constitution, protects citizens from unreasonable searches and seizures by the government. A basic tenet of Fourth Amendment law is that warrantless searches and seizures inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, there are several exceptions to the warrant requirement. *See, e.g., Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *McDonald v. United States*, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

The established warrant exception at issue in this case is the "protective sweep" exception articulated in *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). This Court only recently adopted the holding in *Buie*. *Guzman v. Commonwealth*, 375 S.W.3d 805, 807 (Ky. 2012). However, because other issues were dominant in that case, we did not discuss *Buie* at length. Our first opportunity to further develop our application of *Buie* presented itself most recently in *Kerr v. Commonwealth*, 400 S.W.3d 250 (Ky. 2013).

▮ In *Kerr*, we recognized that *Buie* permits "two types of protective sweeps incident to an arrest that are reasonable and lawful under the Fourth Amendment." *Id.* at 266. The first type of protective sweep allows officers "as a precautionary matter and without probable cause or rea-sonable suspicion, [to] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* (citing *Buie*, 494 U.S. at 334, 110 S.Ct. 1093). The second type of protective sweep "allows officers to undertake a broader search of places not adjacent to the place of arrest if there are 'articulable facts, which taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" *Id.* This is the well-known reasonable suspicion standard. *See Terry*, 392 U.S. at 1, 88 S.Ct. 1868. However, *Kerr* only applied the first category articulated in *Buie*. In contrast, the case currently before the Court requires that, for the first time, we apply the second *Buie* category.

### First Buie Category

▮ Before analyzing this case under the second *Buie* category, we must first briefly address and dispense with the Commonwealth's veiled assertion that Brumley's residence may have been within the area immediately adjacent to the area of arrest, thereby implicating the first, and less stringent, *Buie* category. It is uncontroverted that Brumley was outside the residence at the time of his arrest. There were no other attachments to the trailer other than a few stairs leading from the doorway. It is also undisputed that he came outside willingly, and that at no time prior to the arrest did any officers enter the residence. Therefore, it would be improper to hold that any room or space whatsoever found inside the mobile home adjoined the place of arrest, as the arrest occurred entirely outside the residence. Brumley was already safely in custody and being led away from the residence to an

awaiting vehicle. Further, state and federal courts have consistently applied the second *Buie* category to outside-the-home arrests. *See, e.g., United States v. Henry,* 48 F.3d 1282, 1284 (D.C.Cir.1995); *People v. Celis,* 33 Cal.4th 667, 16 Cal.Rptr.3d 85, 93 P.3d 1027, 1035 (2004); *State v. Spencer,* 268 Conn. 575, 848 A.2d 1183, 1192 (2004); *United States v. Archibald,* 589 F.3d 289, 298 (6th Cir.2009).

### Second Buie Category

In applying the second *Buie* standard, we must clarify our post-*Guzman* interpretation of the "protective sweep" exception since *Buie* was not the law in the Commonwealth until after the Court of Appeals rendered its decision in this case. The reasonable suspicion standard required under the second *Buie* category abrogates our former two-part test as it relates only to "protective sweeps." Specifically, the trial court determined in its oral findings of fact and conclusions of law that "exigent circumstances coupled with probable cause justified the warrantless search." Similarly, the Court of Appeals based its decision on the same legal standard requiring exigent circumstances to be accompanied by probable cause. *See Southers v. Commonwealth,* 210 S.W.3d 173, 176–77 (Ky.App. 2006). In direct contrast, the U.S. Supreme Court has expressly stated that probable cause is "unnecessarily strict." *Buie,* 494 U.S. at 336–37, 110 S.Ct. 1093 (holding that reasonable suspicion is the correct constitutional standard to be applied in protective sweep cases). To the extent *Southers* and similar cases conflict with the narrow "protective sweep" exception analyzed under a *Buie* framework, they are overruled. However, these cases still apply generally to other categories of exigency exceptions to the extent they do not otherwise conflict with Kentucky or federal law.

■ With these post-*Guzman* principles in mind, we now turn to whether the officers here harbored the requisite reasonable suspicion needed to give rise to a constitutional protective sweep. Reasonable suspicion must be determined "under the totality of the circumstances, considering 'all of the information available to law enforcement officials at the time.' " *Humphrey v. Mabry,* 482 F.3d 840, 846 (6th Cir.2007) (quoting *Feathers v. Aey,* 319 F.3d 843, 849 (6th Cir.2003)). However, determinative information must relate to the purpose for which the protective sweep exception was created. The justification for a protective sweep is the safety threat posed by unseen third parties in the house. *Buie,* 494 U.S. at 336, 110 S.Ct. 1093.

### Circumstances Surrounding the Arrest

■ The Commonwealth urges us to consider that the arrest occurred at night, and that the mobile home had no electricity and was located in a remote area of a rural county. While we understand that any obstruction to an arresting officer's line of sight is not ideal, it does not influence our determination. *United States v. Ford,* 56 F.3d 265, 269 n. 6 (D.C.Cir.1995) (noting that, "Poor lighting ... [has] nothing to do with a belief that the area harbors 'an individual posing a danger to those on the arrest scene.' ") (quoting *Buie,* 494 U.S. at 334, 110 S.Ct. 1093); *see also United States v. Archibald,* 589 F.3d 289 (6th Cir.2009) (officers' perceived vulnerability and inability to see certain parts of the arrestee's residence did not demonstrate that another person was present and posed a danger). At oral argument, the Commonwealth referred to Brumley's residence as "broken down," specifically referencing the mobile home's broken windows and lack of electricity. We note that the unseemly appearance of Brumley's single-wide castle is of no consequence to our

analysis. Even a "ruined tenement" receives constitutional protection. *See Guzman*, 375 S.W.3d at 809.

■ Similarly, the fact that the officers were there to serve a felony arrest warrant on Brumley is irrelevant to our analysis. If it were otherwise, a protective sweep would be permitted every time an officer serves a felony arrest warrant. Such a result would render *Buie* meaningless. In any event, a defendant's own dangerousness is not relevant in "determining whether the arresting officers reasonably believed that *someone else inside the house* might pose a danger to them." *United States v. Colbert*, 76 F.3d 773, 777 (6th Cir.1996) (emphasis in original). Even a defendant's prior arrests for violent crimes have been determined to be "irrelevant" under a protective sweep analysis. *Archibald*, 589 F.3d at 299 (citing *Colbert*, 76 F.3d at 777).

### Knowledge of Firearms in the Residence

The Court of Appeals concluded that the officers who were present at the time of Brumley's arrest "received information that guns were in the residence." However, the trial court's oral findings of fact were much less certain. The trial court found that "there was testimony [that] there *might* be [a] long gun and a handgun in the trailer[.]" After reviewing the record in its entirety, we have reservations concerning the extent to which the officers were actually informed of the presence of guns in Brumley's residence.

■ We recognize that the transmission of collective knowledge between investigating and arresting officers is crucial to the success of law enforcement. However, the "collective knowledge" doctrine is nevertheless restricted by the Fourth Amendment. *See United States v. Lyons*, 687 F.3d 754, 766 (6th Cir.2012); *see also United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). Although such an inquiry may have been advisable in this case, it is not dispositive.

■ Therefore, we accept that some prior information existed between the officers concerning the presence of guns at Brumley's residence. Nevertheless, the mere presence of guns in the home of an arrestee does not automatically rise to the level of reasonable suspicion that would justify a protective sweep. *Cf. United States v. Atchley*, 474 F.3d 840, 844, 849–50 (6th Cir.2007) (approving a protective sweep of a motel room after police officers, from outside the motel room, observed a handgun on the bed in addition to believing that defendant's hostile companions may have re-entered the room).

■ Further, common sense suggests that an overwhelming amount of law abiding citizens in Kentucky have guns in their homes for lawful purposes. In other words, Brumley's rights under the Fourth Amendment cannot be diminished simply by exercising his rights under the Second Amendment. Therefore, this knowledge alone does not create "reasonable suspicion" that the officers were in imminent peril.

### Noise Emanating from the Residence

■ At least some of the arresting officers heard a rustling or shuffling noise coming from inside the residence. This prompted several officers to enter and sweep the residence, revealing the presence of Brumley's canine confederate. We find the noise described in the record to be unpersuasive evidence establishing reasonable suspicion to justify a protective sweep.

A midnight knock at one's home and the arrest of a person living there could hardly go unnoticed by fellow residents. It

strains credulity to think other persons who may be residing in the home—especially family members and loved ones—are not going to be stirring inside with at least some interest and most likely alarm. If noise inside the home of an arrestee provides reasonable suspicion for a protective sweep, then there would conceivably be reason to sweep almost every house where there is more than one member of the household. *Buie* requires something more. Many, if not most homes in Kentucky, harbor multiple occupants—including pets. Our analysis requires facts reasonably demonstrating that Brumley's home harbored not just an additional individual, but rather an "individual posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 334, 110 S.Ct. 1093. Further, the fact that Brumley was living alone in this instance is of no significance when applying the reasonable suspicion standard.

Several federal cases have found that noises emanating from a residence supported a reasonable belief in the presence of other individuals. However, these cases have required contributing facts or stronger evidence than what the Commonwealth presented in this case. *See, e.g., United States v. Talley*, 275 F.3d 560, 562 (6th Cir.2001); *United States v. Stover*, 474 F.3d 904, 910–12 (6th Cir.2007).

▮ Similarly, Kentucky cases applying Kentucky's earlier standard for protective sweeps have required additional information implicating the presence of a concealed third party that might pose as a threat. *See Davis v. Commonwealth*, 120 S.W.3d 185 (Ky.App.2003) (holding that protective sweep was justified when arrestee falsely informed that no one else was present, and then third party suddenly appeared from the back of the mobile home); *see also Commonwealth v. Elliott*, 714 S.W.2d 494, 496 (Ky.App.1986). The

undiscovered individual must be more than just a fellow resident. There must be some indication that the hidden third party may be a danger to officers on the scene. Justifying a protective sweep on the ground that law enforcement officers had no information at all is directly contrary to the Supreme Court's explicit command in *Buie*. *Archibald*, 589 F.3d at 300. A valid protective sweep requires "that the police have an articulable basis on which to support their reasonable suspicion of danger from inside the home." *Id.* The absence of information cannot be an articulable basis for a protective sweep that requires information to justify it in the first place. *Id.*

In this case, the officers had no information whatsoever that an accomplice or other third party may have been with Brumley in the residence. Again, several federal cases prove instructive when determining the possibility of the existence of potential assailants. In *United States v. Biggs*, the United States Court of Appeals for the Sixth Circuit approved a sweep based on several factors, including (1) the police had received information that another person would be meeting the defendant at his motel room, and (2) the defendant had previously been arrested on multiple occasions in the presence of someone with a firearm. 70 F.3d 913, 916 (6th Cir.1995); *see also Atchley*, 474 F.3d at 844, 849–50. Under the totality of the circumstances, police officers in these cases had, at a minimum, reasonable suspicion that potentially dangerous criminal accomplices may have been present.

Moreover, the arrest warrant issued for Brumley was for possession of a controlled substance which did not involve accomplices. Similarly, the arrest warrants involved in *Archibald* were for probation violations which did not involve accomplices, and "therefore did not raise con-

cerns that an accomplice might be present in Archibald's apartment at the time of his arrest." *Archibald,* 589 F.3d at 299. Neither the felony arrest warrant nor any other evidence in this case directly or indirectly implicated that accomplices may have been present at Brumley's residence at the time of his arrest.

■ Reviewing the evidence as a whole, the Commonwealth has failed to demonstrate that the information obtained by law enforcement officers concerning the presence of guns in the residence, coupled with the noise coming from inside, created a rational inference that the mobile home harbored an individual posing a danger to officers on the scene. All of the published cases cited by the dissent to counter this holding deal with officers who were inside the home prior to the sweep and/or had a host of articulable facts justifying the sweep which are not present in this case.

### Officers' Safety

Regarding the safety of the officers here, it hardly seems "reasonable" for them to be ordered into a darkened house where they could become easy targets for anyone wishing to do them harm from within the blackened confines. Their primary objective of arresting Brumley without mishap having been achieved, an attentive departure from the premises with their prisoner would surely have been safer than an invasion of the home. *See Archibald,* 589 F.3d at 300 ("In fact, if, as the officers testified, entry into a 'fatal funnel' poses a greater risk to law enforcement, the prudent course of action would have been to back away from the door, not proceed through it.").

■ We certainly do not seek to diminish the legitimacy of law enforcement officers' concern for their personal safety. We have always endeavored to keep the safety concerns of officers foremost in our minds when engaging in this delicate balancing of constitutional proscriptions. But even prior to the U.S. Supreme Court's decision in *Buie,* this Court recognized that mere apprehension cannot serve as a pretext for breaching the search warrant requirement. *See Commonwealth v. Johnson,* 777 S.W.2d 876, 880 (Ky.1989). Adopting the reasonable suspicion standard in protective sweep cases only sharpens this concern. Although reasonable suspicion is a very low threshold, it is not a carte blanche for law enforcement officers to dispense with the search warrant requirement.

In sum, the warrantless search at issue satisfies neither the textual directives of the Fourth Amendment and Section 10 of the Kentucky Constitution nor the judicially-created exception under the second *Buie* category. The Commonwealth failed to meet its burden of demonstrating "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Buie,* 494 U.S. at 334, 110 S.Ct. 1093. Therefore, we reverse the trial court's order denying Brumley's motion to suppress evidence obtained from the protective sweep.

### CHAIN OF CUSTODY

Brumley also argues on appeal that the trial court erred in dismissing his second motion to suppress evidence. This argument was based on a claim that the Commonwealth failed to establish the proper chain of custody for the evidence seized from his home. Since we have determined that the warrantless search of Brumley's home was unconstitutional under the above analysis, any evidence seized as a result of the search is inadmissible. Thusly, Brumley's chain of custody claim is moot.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's denial of Brumley's motion to suppress evidence obtained from the unlawful search of his residence and remand this case to the trial court for further proceedings consistent with this opinion.

NOBLE, SCOTT and VENTERS, JJ., concur. ABRAMSON, J., dissents by separate opinion in which MINTON, C.J., joins. KELLER, J., not sitting.

ABRAMSON, J., Dissenting:

In the course of the late-night felony arrest of Randy Brumley at his dilapidated mobile home in an isolated part of Clinton County, the arresting officers heard shuffling noises emanating from the residence. Knowing that Brumley kept firearms on the premises, the officers were concerned that the noises might have been made by an armed third-person who could pose a threat to their safely as they removed Brumley from the scene. To allay those concerns, the officers conducted a protective sweep of the mobile home, and in the course of the sweep they observed in plain view equipment used in the illegal manufacture of methamphetamine. Largely on the basis of that evidence, a Clinton County jury found Brumley guilty of that offense, for which he was sentenced to ten years in prison.

Prior to his trial, Brumley moved for the suppression of the drug manufacturing evidence on the ground that the officers' sweep of his mobile home was unreasonable and so violated his rights under the Fourth Amendment to the United States Constitution. Upholding the sweep, the trial court found, expressly,[1] that the officers had prior intelligence that Brumley possessed firearms and that as they were in the course of taking him into custody immediately outside his mobile home they heard shuffling noises from inside the home that could have been made by a person. The combination of these facts giving rise, in the trial court's view, to exigent safety concerns, the trial court ruled that the officers could lawfully conduct a protective sweep of the residence.

On Brumley's appeal from his conviction, the Court of Appeals affirmed. The panel unanimously concluded that in the circumstances of Brumley's arrest, the officers had *probable cause* to think that a dangerous third person was present and so could lawfully allay their concerns by entering and sweeping Brumley's mobile home.

Notwithstanding the lower courts' assessments, the majority of this Court disagrees. In fact, the police officers were serving a felony arrest warrant for methamphetamine possession on a person who had evaded arrest for a significant time, who was known to be armed, who was finally captured at a mobile home without electricity, without windows, located in a remote area and who, when finally taken into custody, did not have his gun. When the officers heard, almost as soon as the arrest was effected, a shuffling noise from inside the home such as a person might make, they entered and conducted a sweep. The Court now says, the officers could not reasonably suspect that the noise they heard might have been made by a person posing a danger to themselves. This is so, according to the Court, not because an ordinary person in those circumstances would not have those concerns, but rather because the officers did not have reason, before they arrived at the scene, to think that a dangerous third person might be present. Without some such

1. My review of the record did not disclose any reserve in the trial court's findings.

advance suspicion, the majority suggests, the officers were bound to presume that the noise coming from Brumley's dark, windowless mobile home was merely a loved one roused from slumber by the ruckus at the door. With all due respect, I think the trial court and the Court of Appeals got this one right.

The United States Supreme Court has held that the Fourth Amendment allows police officers conducting an in-home arrest of an individual to conduct a warrantless protective search of that dwelling when they have a reasonable suspicion that "the house is harboring a person posing a danger to those on the arrest scene." *Maryland v. Buie*, 494 U.S. 325, 336, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). The Supreme Court held in *Buie* that it is not necessary for the officers to show "probable cause to believe that a serious and demonstrable potentiality for danger existed." 494 U.S. at 336, 110 S.Ct. 1093. An officer must instead possess a "reasonable belief based on specific and articulable facts" that there might be such a threat. 494 U.S. at 337, 110 S.Ct. 1093. Under *Buie*, before police officers effecting an arrest may engage in a protective sweep they must be able to articulate facts specific to the particular case giving rise to a "reasonable suspicion" both that a person other than the arrestee may be present and that that person "pos[es] a danger to those on the arrest scene." 494 U.S. at 334, 110 S.Ct. 1093. The officers are entitled to take steps to ensure their safety both before and after the arrest. *Id.* In determining whether a protective sweep was justified, a reviewing court considers the totality of the circumstances surrounding the officer's actions and asks whether in those circumstances a reasonable officer might have had the requisite articulable suspicion of danger. *United States v. Rodriguez*, 601 F.3d 402 (5th Cir.2010).

The Court purports to apply a "totality of the circumstances" analysis, but rather than considering the "totality" of the circumstances confronting the officers outside Brumley's mobile home, it looks at a few of the circumstances one-by-one and arrives at the invalid conclusion that because none of the circumstances alone would justify a sweep they are also insufficient collectively. While it may be that neither darkness, the condition or isolation of the residence, the crime for which the arrestee is being arrested, the arrestee's history, the presence of firearms, nor even unidentified sounds of movement emanating from the arrest scene would be enough *by itself* to justify a protective sweep, these are all clearly factors that will inform the officer's assessment of the situation. In their totality they could, and in this case, in my view, they did, give rise to a reasonable suspicion of danger.

In particular, prior intelligence that an arrestee possesses firearms clearly heightens officer safety concerns, *United States v. Davis*, 471 F.3d 938 (8th Cir.2006),[2] and unidentified shuffling noises at the scene is a textbook example of the sort of specific, articulable, suspicion-generating facts *Buie* requires. Maren J. Messing, *The Protective Sweep Doctrine: Reaffirming A Limited Exception*, 44 Colum. J.L. & Soc. Probs. 33, 50 (2010) (" 'Specific facts,' on the other hand, relate to the case at issue, such as when the police have seen a person enter the home who is unaccounted for at the time of the first arrest, or when the police have heard a noise coming from a

---

2. The Court's suggestions to the contrary notwithstanding, the prevalence of guns in our society obviously does not make a gun at an arrest scene any less dangerous. Do we really want to say to our police officers that precisely *because* guns have become ubiquitous, their ability to protect themselves is lessened?

back room."). Accordingly, a number of courts have noted that where there are articulable reasons to suspect the presence of guns, unaccounted for shuffling noises emanating from the arrest scene give rise to a reasonable apprehension of an armed third person and justify a sweep to allay that concern. *United States v. Lashley*, 524 Fed.Appx. 843 (3rd Cir.2013) (unpublished opinion) (noise in basement as officers were arresting defendant on weapons charges in kitchen justified sweep of basement); *Delhall v. State*, 95 So.3d 134 (Fla. 2012) (noise in bedroom while officers investigating a shooting talked with resident in living room justified sweep); *United States v. Mackey*, 431 Fed.Appx. 594 (9th Cir.2011) (unpublished opinion) (noise (which turned out to be dogs) from inside house as officers arrested defendant on drug charges at front door justified sweep); *United States v. Virgil*, 444 F.3d 447 (5th Cir.2006) (noise at rear of house while officers were arresting defendant on weapons charge at front of house justified sweep) *United States v. Gandia*, 424 F.3d 255 (2nd Cir.) *cert. denied* 555 U.S. 930, 129 S.Ct. 312, 172 L.Ed.2d 226 (2008) (noting that unidentified noises give rise to reasonable suspicion of person's presence, but officers in this case did not claim to have heard noise); *United States v. Taylor*, 248 F.3d 506 (6th Cir.), *cert. denied* 534 U.S. 981, 122 S.Ct. 414, 151 L.Ed.2d 315 (2001) (noises from interior of apartment as officers investigating murder talked to resident at front door justified sweep); *United States v. Tucker*, 166 F.3d 1223 (10th Cir.1999) (unpublished opinion) (noises from inside residence while officers waited at front door for arrest warrant

subject known to possess firearms justified sweep).[3]

The Court dismisses this seemingly straightforward result by noting that many of these cases involve factors other than guns and noise (this case, too, involves several other factors) and by emphasizing the officers' lack of prior information concerning a possible accomplice. The Court's ruling gives short shrift to the risk posed to police officers by persons other than "accomplices," such as frightened or irate family members, and to the fact that police officers often do not have advance notice of the dangers they are asked to confront. The result is the needless reversal of a well-supported conviction, and, concerningly, the exposure of police officers to the needless risk of serious harm. I respectfully dissent.

MINTON, C.J., joins.

---

**3.** *United States v. Archibald,* 589 F.3d 289 (6th Cir.2009), on which the majority relies, is readily distinguishable. In that case the Sixth Circuit held that noises apt to have been made by the arrestee himself before coming

to the door did not give rise to reasonable suspicion that a third person was present. Here, of course, the noises were clearly not caused by Brumley.