**Dustin M. CARTER, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2012–CA–001253–MR.**

Court of Appeals of Kentucky.

March 14, 2014.

Rehearing Denied Dec. 2, 2014.

---

8. Kentucky Rules of Civil Procedure.

Thomas L. Osborne, Paducah, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Julie Scott Jernigan, Assistant Attorney General, Frankfort, KY, for appellee.

Before ACREE, CHIEF JUDGE; JONES and VANMETER, Judges.

### OPINION

ACREE, Chief Judge:

Dustin M. Carter appeals from the June 14, 2012, judgment and sentence on conditional plea of guilty of the McLean Circuit Court. That judgment found Carter guilty of possession of a handgun by a convicted

felon; possession of a firearm by a convicted felon; possession of a controlled substance, first-degree, while in possession of a firearm; marijuana cultivation, five or more plants, while in possession of a firearm; sale or investment of drug-related income; and trafficking in marijuana, over eight ounces but less than five pounds, while in possession of a firearm, and sentenced him to ten years. Carter appeals the trial court's denial of his motion to suppress certain evidence discovered during a warrantless search of his residence. We hold that the trial court erred when it concluded that the search of Carter's residence fell within the scope of a "protective sweep" incident to an in-home arrest, an exception to the Fourth Amendment. However, because the trial court correctly found, in the alternative, that the evidence would have been inevitably discovered, we affirm.

The facts underlying this case are not in dispute. On December 10, 2011, McLean County Deputy Sheriff Joseph Stratton received an anonymous call that Carter was growing marijuana in his home and garage located at 413 Pete Scott Road. The caller provided detailed information about the marijuana growing operation and further indicated that he knew Carter personally and had been inside his home; that Carter was in possession of multiple firearms; and that Carter had a girlfriend who was often present in the residence and often spent the night.[1] Based upon this information, Deputy Stratton contacted Kentucky State Police Detective Matthew Conley. On December 15, 2011, Deputy Stratton and Detective Conley, along with several other officers, arrived at Carter's residence to conduct a "knock and talk." The officers then encountered a neighbor who stated that he had noticed a strong chemical odor coming from Carter's property and that there were frequently people coming and going in and out of the property.

Deputy Stratton and Detective Conley approached Carter's property in order to speak with him. Appellant was on the front porch and spoke with Detective Conley while Deputy Stratton stood beside Carter's garage. The officers testified that they could hear a radio playing inside the house but observed no affirmative indication that the home was occupied by anyone other than Carter.

Detective Conley noticed three dead ducks on the porch and, knowing that Carter was a convicted felon, asked Carter how he had killed them. Carter admitted that he had used a shotgun to kill the ducks and stated that the gun was at his mother's house. Carter eventually acknowledged that the gun was inside the residence, and offered to retrieve the gun for the officers.

The officers declined Carter's offer and asked to search the residence. Carter refused permission. The officers then placed Carter under arrest for admittedly being a felon in possession of a gun. Carter was handcuffed and seated on the front porch of his home. The officers again asked to search the home, and Carter again refused permission.

The officers then discussed engaging in a protective sweep of the residence to determine whether there were other persons in the home. Detective Conley contacted the McLean County Attorney regarding obtaining a search warrant and the appropriateness of a protective sweep. The County Attorney advised Detective Conley to do a protective sweep of the residence to ensure that no other parties were pres-

---

1. The information provided by the anonymous caller was extensive and very detailed. However, the officer never could identify the caller.

ent. Inside the residence the officers observed firearms, ammunition, and marijuana plants in plain sight. Based on what was discovered during the search, officers then obtained a search warrant that would go beyond what they discovered in plain sight. The search warrant was executed and substantial evidence was seized.

As a result of the events of December 15, 2011, Carter was charged with two firearm-related charges and six drug-related charges. Carter filed a motion to suppress the evidence discovered in his home. A suppression hearing was held, and the motion was denied. Thereafter, Carter entered a conditional guilty plea. Carter also filed a motion to reconsider the denial of his suppression motion, which was denied in an opinion and order entered on June 7, 2012. As a result of Carter's guilty plea, he was found guilty of possession of a handgun by a convicted felon; possession of a firearm by a convicted felon; possession of a controlled substance, first-degree, while in possession of a firearm; marijuana cultivation, five or more plants, while in possession of a firearm; sale or investment of drug-related income; and trafficking in marijuana, over eight ounces but less than five pounds, while in possession of a firearm, for which he received a total sentence of ten years. Several other charges were dismissed. This appeal followed.

Our review of a trial court's decision on a motion to suppress is twofold. First, we must determine whether the trial court's findings of fact are supported by substantial evidence. If so, then they are conclusive. Kentucky Rules of Criminal Procedure (RCr) 9.78. Second, "we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law." *Smith v. Com-*

*monwealth,* 323 S.W.3d 748, 752 (Ky.App. 2009).

■ The trial court in this case first found the officers had acted reasonably when they entered Carter's home to do a warrantless protective sweep. Specifically, the trial court concluded that the protective sweep was justified by circumstances which led the police officers to believe they were in danger from being shot by a third party inside the house. Carter argues that the circumstances did not support a search of the home under the protective sweep doctrine. For the following reasons, we agree with Carter.

It is well established that a warrantless search of an individual's private residence, absent exigent circumstances, is prohibited by the Fourth Amendment to the United States Constitution. *See, e.g., Commonwealth v. McManus,* 107 S.W.3d 175 (Ky. 2003). However, the United States Supreme Court has expanded the breadth of permissible warrantless searches to include a properly limited protective sweep in conjunction with an in-home arrest. *Maryland v. Buie,* 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

The holding of *Buie,* officially adopted by the Kentucky Supreme Court in *Guzman v. Commonwealth,* defined a permissible protective sweep to include all or part of an individual's home when officers possess an objectively reasonable belief that the residence may be harboring a dangerous person. 375 S.W.3d 805, 808 (Ky. 2012).

■ Since *Guzman,* our Supreme Court has further fleshed out our understanding of *Buie.* In *Kerr v. Commonwealth,* 400 S.W.3d 250 (Ky.2013), the Supreme Court recognized that *Buie* permits "two types of protective sweeps incident to an arrest that are reasonable and lawful under the Fourth Amendment." *Kerr,* 400 S.W.3d at

266. The first type allows officers "as a precautionary matter and without probable cause or reasonable suspicion, [to] look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* (citing *Buie,* 494 U.S. at 334, 110 S.Ct. 1093). The second type "allows officers to undertake a broader search of places not adjacent to the place of arrest if there are 'articulable facts, which taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.' " *Id.; see also Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968) ("in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion").

*Kerr* reviewed the sweep undertaken in that case only under the analysis articulated in *Buie* for the first type of sweep. After *Kerr,* our Supreme Court addressed the second type of sweep for the first time; that case is *Brumley v. Commonwealth,* 413 S.W.3d 280 (Ky.2013). Upon facts similar to those in the case before us, the Supreme Court found the officers had violated the Fourth Amendment because the sweep conducted did not comply with the requirements established in *Buie* and its progeny for protective sweeps of the second type. The case now before this Court is also of the second type and is governed by *Brumley.*

The Supreme Court in *Brumley* made a point to note that "[o]nce Brumley cleared the threshold and descended the adjoining steps, he was totally clear of the trailer." *Id.* at 283. Like Brumley, Carter was outside his own threshold when the officers approached him and when they arrested him. This fact categorizes the officers' sweep as being of the second type.

■ In *Brumley,* the officers were aware that firearms were inside the residence. *Id.* Similarly, in our case, Carter informed the officers that his shotgun was inside. But, "the mere presence of guns in the home of an arrestee does not automatically rise to the level of reasonable suspicion that would justify a protective sweep.... [T]his knowledge alone does not create 'reasonable suspicion' that the officers were in imminent peril." *Id.* at 286 (citation omitted).

In *Brumley,* the officers heard a noise inside the trailer; it was later discovered that a dog was inside. *Id.* However, our Supreme Court said,

> If noise inside the home of an arrestee provides reasonable suspicion for a protective sweep, then there would conceivably be reason to sweep almost every house where there is more than one member of the household. *Buie* requires something more. Many, if not most homes in Kentucky, harbor multiple occupants—including pets. Our analysis requires facts reasonably demonstrating that Brumley's home harbored not just an additional individual, but rather an "individual posing a danger to those on the arrest scene." *Buie,* 494 U.S. at 334, 110 S.Ct. 1093.

*Id.* at 287. In the case before us, the officers heard a radio playing inside, but also indicated they had no reason to believe anyone was present but Carter, and he was in their custody. This is tantamount to the officers' acknowledgement that they had no basis to fear danger from inside the residence.

The fact that the arrest was conducted outside the home and that officers had observed no signs that the home was otherwise occupied dispels any claim of fear of

an "immediate threat" to the arresting officers. *See Commonwealth v. Elliott*, 714 S.W.2d 494, 496 (Ky.App.1986). We conclude that this warrantless search violated the Fourth Amendment because it did not fall within the exception for a protective sweep. However, our analysis continues.

As the circuit court was aware, the "inevitable discovery rule" also bears upon the question of suppression. Under the inevitable discovery rule, it is permissible to admit "evidence unlawfully obtained upon proof by a preponderance of the evidence that the same evidence would have been inevitably discovered by lawful means." *Hughes v. Commonwealth*, 87 S.W.3d 850, 853 (Ky.2002) (*citing Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). "The rationale behind the rule is that it does not put the police in a better position than they would have been absent the error, but only puts them in the same position as if there had been no unlawful search." *Commonwealth v. Elliott*, 714 S.W.2d 494, 496 (Ky.App. 1986) (citing *Nix*, 467 U.S. at 443, 104 S.Ct. at 2509, 81 L.Ed.2d 377 at 387).

In its original April 12, 2012, order denying suppression, the trial court stated that, even if this warrantless search did not qualify as a protective sweep, the "evidence would have been inevitably discovered[.]" The conclusory statement is not supported in this one-page order by any fact determinations that would have been helpful to this Court in considering an alternative basis upon which to affirm the trial court. However, the subsequent order denying reconsideration included the following passages relevant to the inevitable discovery of all the evidence:

A neighbor of the defendant interviewed by the officers indicated ... that there was an inordinate amount of traffic in and out of the defendant's home and on Pete Scott Road; in fact, the neighbor stated he had to "run people off" of his own property more than once. He also indicated that he often smelled a strong chemical odor coming from the defendant's premises (which, according to Officer Stratton, was consistent with the marijuana cultivation supposedly occurring there).

When the defendant arrived at his home on the night of his arrest, investigating officers engaged him in conversation on the front porch. The defendant was initially deceptive with the officers concerning his prior criminal history and whether he had any guns in his home. However, upon further questioning, *he acknowledged that he was a convicted felon and that he had a 12 gauge shotgun inside the residence.*

(Order, June 7, 2012; emphasis added). These incontrovertible facts establish the reason the officers needed to enter the residence—to retrieve the shotgun as evidence of the crime for which Carter was arrested—a convicted felon in possession of a firearm. These facts also provide a sufficient justification for the issuance of a warrant to enter and search the residence to recover the weapon.

A search warrant eventually issued. In the affidavit supporting it, Officer Stratton testified, "He [Carter] stated that he had a 12 gauge Benelli Shotgun which was inside the house." While the affidavit and search warrant included additional facts learned only by means of the warrantless search, we hold all the evidence would have been discovered in the course of lawfully recovering the shotgun. Such a lawful search would have put the officers in the same position, discovering evidence in plain sight, as if there had been no prior unlawful search. *See Elliott*, 714 S.W.2d at 496.

It is well-settled that an appellate court may affirm a lower court for any reason

supported by the record. *McCloud v. Commonwealth,* 286 S.W.3d 780, 786 (Ky. 2009). We hold that the trial court's alternative basis for denying Carter's suppression motion—the inevitable discovery of the evidence proposed by the Commonwealth to be offered at trial—was well founded.

For the foregoing reasons, the June 7, 2012, opinion and order of the McLean Circuit Court denying Carter's motion to suppress evidence is affirmed.

ALL CONCUR.