RENDERED: OCTOBER 29, 2015
TO BE PUBLISHED

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$

2014-SC-000653-MR

MICHAEL E. SIMPSON                                            APPELLANT

|  | ON APPEAL FROM JEFFERSON CIRCUIT COURT |
|---|---|
| V. | HONORABLE SUSAN SCHULTZ GIBSON, JUDGE |
|  | NO. 13-CR-000990-02 AND 13-CR-002750 |

COMMONWEALTH OF KENTUCKY                                  APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

## **AFFIRMING**

Appellant, Michael Simpson, appeals from a judgment of the Jefferson Circuit Court convicting him of the crimes of possession of a handgun by a convicted felon and of being a second-degree persistent felony offender. As enhanced, Appellant was sentenced to a total of twenty years in prison. He appeals as a matter of right.

Appellant contends that the trial court misapplied the law pertaining to a search based on a "protective sweep" when it denied his motion to suppress his illegal arrest, seizure, search and fruit from the poisonous tree under *Maryland v. Buie*, 494 U.S. 325 (1990). More specifically, he argues that the police unlawfully located and identified him during the course of a protective sweep at a Louisville residence where he was staying, which in turn led to his unlawful arrest during the course of which he spontaneously uttered an incriminating statement to police. That incriminating utterance, Appellant contends, should

have been suppressed as the fruit of an unlawful search, seizure, and arrest. We disagree.

As demonstrated below, the initial entry of police into the residence was consensual; under the totality of the circumstances, the scope of the protective sweep was reasonable; the initial seizure of Appellant was lawful; and the incriminating statement uttered upon his arrest was spontaneous and not a product of custodial interrogation. We find no violation of *Maryland v. Buie* or other applicable law. We conclude that suppression of Appellant's spontaneous utterance was not required. Accordingly, we affirm Appellant's conviction and sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The chain of events leading to Appellant's incriminating statement began when Louisville Police Officers Spaulding and King stopped a vehicle registered to Cameron Adkins. Police had two outstanding warrants for Adkins' arrest. The driver of the vehicle explained to the officers that he was a friend of Adkins and he told them where she could be found. The officers went to the address and recognized Adkins on the porch. Upon seeing the officers approaching, Adkins quickly went inside the residence. The officers then called for assistance in apprehending Adkins.

Officer Spaulding knocked on the front door. When an occupant of the house, Anthony O'Neal, opened the blinds of a large window beside the door, Spaulding saw a handgun resting on the mantle inside the residence. As O'Neal opened the door, Spaulding saw Adkins retreat into the back part of the

residence. O'Neal consented to the officers' request to enter the home to apprehend Adkins on the outstanding warrants. O'Neal's authority to consent to the officers' entry has not been challenged. Officer King and several other officers called in as backup entered the residence and joined the search for Adkins. O'Neal admitted to having possessed the handgun and that he was a convicted felon.

As they searched for Adkins, officers observed drug paraphernalia throughout the residence. Adkins was eventually located hiding in a bedroom with another female, Megan Bruce. Adkins and Bruce were taken into the front room while Officer King looked about the residence for other individuals whose presence might pose a potential threat to the officers. King found Appellant in the basement trying to hide behind the furnace, and brought him to the front room with the other occupants of the home.

The officers began a check to determine if any of the other individuals present had outstanding warrants. Adkins and Bruce had outstanding warrants and were arrested for that reason. O'Neal was arrested based upon his verified admission that he was a convicted felon and his admission that the handgun on the mantle belonged to him. Appellant falsely identified himself to officers as "Ralph Simpson." When officers found no outstanding warrant for "Ralph Simpson," they allowed Appellant to leave the residence.

Soon afterward, Officer King discovered that Appellant had misrepresented his true identity, and that his true name is Michael Simpson. Furthermore, it was discovered that a warrant for Appellant's arrest was

3

outstanding. Appellant was quickly located and arrested on the warrant and for giving the police a false name. While being processed into jail, Appellant spontaneously acknowledged to Officer King that he owned the handgun found at the residence. At that point, Appellant was charged with the additional offense of possession of a handgun by a convicted felon.

Appellant was tried for possession of a handgun by a convicted felon and for being a persistent felony offender. Appellant moved to suppress the evidence gathered by police as a result of the search of O'Neal's residence. Appellant asserted that the statement he allegedly made to Officer King admitting ownership of the handgun found on the mantle should be suppressed because the police had neither reasonable suspicion nor probable cause to enter the basement of the residence and seize him, and that any evidence obtained as a result of the illegal seizure of his person must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471 (1963). Finding that the officers engaged in a proper protective sweep which resulted in finding Appellant in the basement, the trial court denied the motion and the case proceeded to trial. Appellant was found guilty of being a felon in possession of a handgun. Appellant was additionally found to be a second-degree persistent felony offender and was sentenced to a total of twenty years' imprisonment. This appeal followed.

II. ANALYSIS

**A. Standard of Review — the transition from RCr 9.78 to RCr 8.27**

At the time of Appellant's trial, RCr 9.78 was in effect and governed pretrial motions to suppress evidence.[1] RCr 9.78 provided that "[i]f supported by substantial evidence, the factual findings of the trial court shall be conclusive." Under RCr 9.78 we apply the two-step process adopted in *Adcock v. Commonwealth*, 967 S.W.2d 6 (Ky. 1998). First, we review the trial court's findings of fact under a clearly erroneous standard. *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004). Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. *See* CR 52.01; *Canler v. Commonwealth*, 870 S.W.2d 219, 221 (Ky. 1994) (citations omitted). We then "conduct a *de novo* review of the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law." *Payton v. Commonwealth*, 327 S.W.3d 468, 471–72 (Ky. 2010) (quoting *Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky. App. 2002)).

Effective January 1, 2015, RCr 9.78 was superseded by RCr 8.27. Unlike its predecessor, RCr 8.27 does not specifically address an appellate standard of review. However, CR 52.01[2] provides that findings of fact shall not be set aside unless clearly erroneous. "A finding supported by substantial

---

[1] RCr 9.78 was deleted effective January 1, 2015.

[2] RCr 13.04 provides that "[t]he Rules of Civil Procedure shall be applicable to criminal proceedings to the extent not superseded by or inconsistent with these Rules of Criminal Procedure. Given the rule change, RCr 13.04 makes CR 52.01 applicable.

evidence is not clearly erroneous."[3] *Hunter v. Mena*, 302 S.W.3d 93, 97 (Ky. App. 2010) (citation omitted). Consequently, the application of CR 52.01 leads us to the identical standard applied under RCr 9.78. Accordingly, while RCr 9.78 has been superseded, the standard of review for a pretrial motion to suppress as stated in *Adcock, Welch, Canler, Payton,* and *Neal,* all of which were buttressed by RCr 9.78, remains substantively unaffected.

## B. The Trial Court's Factual Findings

Following the suppression hearing the trial court entered the following findings:

> The testimony of record is that police detective Spaulding received information that a subject for whom there was an outstanding arrest warrant, Cameron Adkins, might be at 1176 Wilson Avenue. When the detective arrived at that address, he saw Ms. Adkins on the porch. She immediately went inside. Spaulding called for backup and was joined by Detective King. They approached the house and knocked on the door. While standing on the doorstep, Spaulding observed a person later identified as Defendant O'Neal open the blinds of a large window beside the front door, then retreat. Through the window, Spaulding observed a handgun setting on the mantle in the unfurnished room. Several moments later, O'Neal opened the door. Spaulding saw other individuals in the home. O'Neal was informed of the purpose of the officers' visit, and O'Neal allegedly allowed the detectives to enter the home. In response to a question about the ownership of the gun, O'Neal allegedly stated that the gun was his. King testified that he searched the home and located two females, one being Ms. Adkins. He also observed suspected controlled substances and paraphernalia in the interior rooms. He found Defendant Simpson in the basement of the home. All the occupants were then led to the front from that the detectives first entered. O'Neal and the two females were arrested, and Simpson was cited for drug

---

[3] "Substantial evidence is that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Hunter v. Mena,* 302 S.W.3d 93, 97 (Ky. App. 2010) (internal quotes and citation omitted).

paraphernalia. However, the detectives confirmed shortly thereafter that Simpson had given a false name and had an outstanding warrant, he was arrested as he walked down the street.

Appellant disputes minor details of the trial court's factual findings[4] which are not relevant to our disposition of the case. The trial court's material findings, as set forth above, are entirely supported by the testimony given at the suppression hearing and are therefore binding upon our review. CR 52.01; *Canler*, 870 S.W.2d at 221. As to the trial court's recitation that "O'Neal allegedly allowed the detectives to enter the home," based upon the trial court's disposition of the case, we construe as a finding that O'Neal did *in fact* allow the officers to enter the home for the purpose of finding and arresting Adkins on the outstanding warrants.

## C. *De Novo* Application of the Law to the Trial Court's Findings

The Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution protect citizens from unreasonable searches and seizures by the government. Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). However, warrantless searches of a residence based upon the consent of a person with the authority to give such permission is a well-established exception to the warrant requirement. *Bratcher v. Commonwealth*, 424 S.W.3d 411, 413 (Ky. 2014). Furthermore, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited

---

[4] For example, Appellant questions the trial court's findings regarding the precise sequence of when those present were gathered together in the living room of the residence.

7

authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton*, 445 U.S. at 603.

As noted above, O'Neal gave the police permission to enter the residence for the purpose of locating Adkins and there is no allegation that O'Neal lacked the authority to consent to the entry. Given that O'Neal had consented, the trial court properly determined that the officers' initial warrantless entry into the home was lawful. *Bratcher*, 424 S.W.3d at 413. Moreover, the officers had a valid warrant for Adkins' arrest and having just seen her enter the residence, they had reason to believe she was inside. Under *Payton*, they were authorized to enter the residence to execute the warrant even without O'Neal's consent.

Since the initial police entry into the residence was proper, the question is then reduced to whether the officers properly extended their search into the basement where Appellant was found after their purpose, arresting Adkins, had been accomplished. As recognized by the trial court and the parties, the established warrant exception at issue at this point in this case is the so called "protective sweep" exception as articulated in *Maryland v. Buie*, 494 U.S. 325 (1990). We recognized this exception and adopted the *Buie* holding in *Guzman v. Commonwealth*, 375 S.W.3d 805, 807 (Ky. 2012),[5] and we further explained its principles in *Kerr v. Commonwealth*, 400 S.W.3d 250 (Ky. 2013), and *Brumley v. Commonwealth*, 413 S.W.3d 280 (Ky. 2013).

---

[5] It is important to note that *Guzman* is distinguishable from this case because in *Guzman* the original consent to enter the residence was limited to consent to enter the front room, whereas here the consent was to enter the home, generally, to arrest Atkins. The consent authority here was far broader than in *Guzman*.

*Buie* permits officers to conduct protective sweeps in two situations. First, with or without probable cause or reasonable suspicion, officers may conduct a protective sweep "as a precautionary matter," looking into spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Brumley*, 413 S.W.3d at 284. Because the protective sweep here extended well beyond the immediate vicinity from which an immediate attack could be launched, this prong of *Buie* is not implicated.

Second, a protective sweep may extend beyond the area immediately surrounding the place of arrest into places that, to a reasonably prudent officer relying upon rational inferences drawn from articulable facts, may harbor a person that poses a threat to those on the scene of the arrest. *Id.* Justification for this type of sweep implicates the well-known reasonable suspicion standard as stated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Buie*, 494 U.S. at 334; *See Brumley*, 413 S.W.3d at 284. This second type of *Buie* protective sweep is implicated here.

"Reasonable suspicion must be determined under the totality of the circumstances, considering all of the information available to law enforcement officials at the time." *Brumley*, 413 S.W.3d at 285 (internal quotes omitted) (citing *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Feathers v. Aey*, 319 F.3d 843, 849 (6th Cir. 2003)). "However, determinative information must relate to the purpose for which the protective sweep exception was created." *Id.* "The justification for a protective sweep is the

9

safety threat posed by unseen third parties in the house." *Id.* (citing *Buie*, 494 U.S. at 336).

The trial court succinctly summed up the factors supporting reasonable suspicion in its suppression order:

> In this case, before Detectives Spaulding and King ever entered the home, they knew at least two people were in the home, and that there was at least one weapon in the home. Upon the opening of the door, the officers observed a third person in the home, going from room to room. Because of the multiple persons present, as well as the presence of the weapon, the Court finds that the detectives had articulable facts from which they could reasonably infer that there were other people in the home who could pose a threat to officer safety. The protective sweep of the house was therefore proper.

Our analysis also takes into account another factor that confronted the officers. In addition to being aware of the gun and drug paraphernalia in the home, the officers also were aware that the house was without workable sinks or toilets, giving the residence some indicia of being a drug house. Drug houses, and their occupants, inherently pose dangers to police officers. Under the totality of the circumstances, this more expansive protective sweep was justified because of the reasonable concern that unseen additional persons may be on the premises posing a threat to the officers.

In summary, we are persuaded that the trial court properly determined that the officers (1) lawfully entered the residence to arrest a fugitive, and (2) conducted a lawful protective sweep justified by articulable facts from which a reasonably prudent officer would believe that other individuals posing a danger to the police may be present. Then, after learning that Appellant had falsely identified himself and that he, too, had an outstanding warrant against him,

10

the police lawfully arrested Appellant. And finally, Appellant's incriminating expression was spontaneous and not a product of custodial interrogation. Consequently, the statement was lawfully used against him at trial. *Campbell v. Commonwealth*, 732 S.W.2d 878, 881 (Ky. 1987) ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected.") (citation omitted).

In summary, the trial court properly denied Appellant's motion to suppress the evidence obtained against him as a result of the initial entry into the home and the ensuing protective sweep.

### III. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel T. Goyette
Louisville Metro Public Defender of Counsel
Office of the Louisville Metro Public Defender

Cicely Jaracz Lambert
Assistant Appellate Defender
Office of the Louisville Metro Public Defender

Sean Thomas Pharr
Louisville Metro Public Defender


COUNSEL FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Taylor Allen Payne
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General