# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 16, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2016-SC-000066-MR

JOHN E. MATLOCK                                             APPELLANT

|  | ON APPEAL FROM WARREN CIRCUIT COURT |
|---|---|
| V. | HONORABLE STEVE ALAN WILSON, JUDGE |
|  | NO. 14-CR-00542-001 |

COMMONWEALTH OF KENTUCKY                           APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

John Matlock entered a conditional guilty plea to first-degree manufacturing methamphetamine and second-degree persistent-felony offender (PFO), for which he was sentenced to thirty years' imprisonment. He now appeals that judgment as a matter of right[1], contending that the trial court erred in denying his motion to suppress evidence of the controlled substance. Because we find no reversible error, we reject Matlock's argument and affirm the judgment below.

---

[1] Ky. Const. § 110(2)(b).

# I. FACTUAL AND PROCEDURAL BACKGROUND.

Shortly before 5:00 am, the Warren County Sheriff Department responded to a call describing a suspicious person wearing a black t-shirt going door-to-door. Deputy Jason Richerson arrived and found a man matching that description, later to be identified as Thomas Bowles, sitting on a bicycle in front of a double-wide trailer. When asked what he was doing, Bowles claimed that he and his girlfriend came to this specific location to pick up some of her belongings. Suspicious that Bowles may be breaking into vehicles or acting as look-out to someone breaking into vehicles, Deputy Richerson approached the residence and knocked on the door.

When no one answered the door, Bowles informed Deputy Richerson that his girlfriend may be in the storage shed behind the home. Deputy Richerson went around back to the storage shed, which was about ten feet away from the back of the trailer. The shed was notably "pre-fab;" that is, there was nothing remarkable about the structure, and Deputy Richerson simply thought the structure was a storage unit. It was supported by cinder blocks and used a cooler as a step into the entrance.

As he neared, he heard three voices inside the shed—two female and one male. He knocked on the door, a woman asked who was there, and he responded that it was the Warren County Sheriff Department. After knocking again, three people emerged—Brittany Peay, Melissa Tishner, and Matlock. As the door opened, Deputy Richerson smelled a strong chemical order that he immediately associated with methamphetamine. After he asked the individuals

2

about the smell, Matlock became irate and adamant that Deputy Richerson not be permitted to enter the shed, screaming "JD, JD, JD" toward the trailer.

As it happens, JD, or Jason D. Borden, is the owner of the entire property, including the shed. Deputy Richerson informed Borden that he believed illegal activity was going on in the shed and asked to do a quick search to see if there was an active meth lab. Borden told Deputy Richerson that he could search his home. After Deputy Richerson corrected him that his interest was in the shed, Borden consented to the search.

Deputy Richerson went into the shed and discovered burned foil and a small baggie with white powder laying on a table. Around the same time, Deputy Richerson was joined by Deputy Robert Smith. After Matlock told them nothing harmful was inside the shed, the two officers re-entered and found a five-gallon bucket that was an active meth lab. Matlock was arrested and charged with first-degree manufacturing methamphetamine and second-degree PFO.

In circuit court, Matlock moved to suppress the evidence discovered in the shed under the theory that Deputy Richerson violated his Fourth Amendment rights. The trial court rejected his motion, declaring that Matlock did not have standing to claim that Deputy Richerson entered the curtilage of Borden's property and thereby conducted an illegal search. The trial court further elaborated that there was no indication that the shed was inhabited nor that Matlock actually resided in the shed. And even still, the circuit court continued, the search of the premises was constitutionally valid because law

enforcement reasonably believed Borden maintained full control of the shed and they received his consent. Matlock now directly appeals that ruling to this Court as a matter of right.

## II. ANALYSIS.

### A. Standard of Review.

The Fourth Amendment to the United States Constitution guarantees "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures..." We offer a substantially similar protection in Section 10 of the Kentucky Constitution.[2] And as a consequence for violating this protection, the United States Supreme Court has held that suppression of evidence is the appropriate remedy for Fourth Amendment violations.[3]

But in moving a trial court to suppress evidence, the defendant bears the burden of establishing his own standing to challenge the constitutionality of a search.[4] To do so, a defendant must prove he had a "legitimate expectation of privacy in the premises."[5] To establish this expectation of privacy, a defendant must prove: (1) that he has exhibited an actual (subjective) expectation of

---

[2] Ky. Const. § 10 ("The people shall be secure in their persons, houses, papers, and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.").

[3] *See United States v. Leon*, 486 U.S. 897 (1984).

[4] *See Ordway v. Commonwealth*, 352 S.W.3d 584, 592 (Ky. 2011).

[5] *Id. See also Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (the "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.").

4

privacy in the area; and that (2) society is prepared to recognize that expectation as legitimate.[6]

Upon review of a circuit court's denial of a defendant's motion to suppress, all factual findings are conclusive unless they are not supported by substantial evidence.[7] As such, findings of fact are reviewed for clear error, and are given their due weight to inferences drawn from the facts by law enforcement and trial judges.[8] We then conduct a de novo review of the entirety of the trial court's legal analysis.[9] Keeping that standard in mind, we now turn to Matlock's claims.

## B. The Trial Court was Correct in Denying Suppression.

### 1. There was no curtilage violation.

Matlock's initial argument on appeal is that the trial court incorrectly determined he did not have standing to challenge the constitutionality of the search of the shed. He presents two arguments in favor of his standing: (1) that he was a tenant within the curtilage of Borden's property; and (2) that he

---

[6] See Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring) ("My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'").

[7] See Commonwealth v. Neal, 84 S.W.3d 920 (Ky. App. 2002). Originally, Kentucky Rules of Criminal Procedure (RCr) 9.78 specified that "if supported by substantial evidence factual findings of the trial court shall be conclusive." That rule was replaced by RCr 8.27, which does not specify an appellate standard of review. But this old standard remains under Kentucky Rules of Civil Procedure (CR) 52.01 and this Court endorsed the continuation of this standard in Simpson v. Commonwealth, 474 S.W.3d 544, 546-47 (Ky. 2015).

[8] See Ornelas v. United States, 517 U.S. 690, 699 (1996).

[9] Simpson, 474 S.W.3d at 546.

5

had unrestricted access to the main residence and could ask people to leave without permission. The trial court held that Matlock's status as a tenant in the shed is "implausible" and determined he possessed no legitimate expectation of privacy.

The doctrine of curtilage developed as a matter of common law to extend the same protection one enjoys inside a dwelling to the area immediately surrounding the home.[10] The curtilage of a house extends to a distance that an individual may reasonably expect to be treated as part of the home itself.[11] So the curtilage doctrine is a right in privity with a property owner's Fourth Amendment right to be free from unreasonable searches and seizures in his own home. This is the driving point behind the circuit court's determination that Matlock lacked standing—curtilage rights are categorically tied to the home. Borden is the owner of the main residence, and the trial court declared only he has standing to accuse law enforcement of impermissibly invading his curtilage.

Matlock claims his status as a tenant in the shed behind Borden's property gives him license to assert Borden's curtilage rights. First, we agree with the trial court that his claim of residence in the shed is dubious at best. Whether it be the lack of rent payments, Borden's failure to immediately recognize Matlock as a tenant, or Matlock's alleged self-description as a

---

[10] *See United States v. Dunn*, 480 U.S. 294 (1987).

[11] *See Oliver v. United States*, 466 U.S. 170 (1984). *See also Quintana v. Commonwealth*, 276 S.W.3d 753, 757 (Ky. 2008).

6

homeless person, there is substantial evidence in the record to support a factual finding that Matlock was not actually a tenant in the shed when the search occurred.

But if he was a tenant, this fact is meaningless to his ability to assert the curtilage rights for the entire property. The storage shed was indeed on Borden's property and close to his home. But because curtilage is tethered to Fourth Amendment protections within the home, standing to assert that doctrine belongs solely with the property owner or one with a legitimate expectation of privacy within Borden's trailer. Only an individual with standing to challenge a search of the home itself possesses standing to assert curtilage rights associated with the property. And no one can prove Matlock possessed those privacy expectations within Borden's home.

Matlock attempts to make this point by offering an affidavit from his daughter, who lived in the main residence with Borden. According to the affidavit, Matlock enjoyed unrestricted access to the trailer, he helped prepare the children for school, and he tended to pets. But there are three issues with this piece of evidence. First, this affidavit was filed after Matlock's suppression hearing. The trial court allowed it to be admitted into evidence but noted that it did not change the court's opinion. Second, this evidence is unsupported by other facts in the record. And finally, even if its contents are true, the affidavit does nothing to persuade us Matlock enjoyed Fourth Amendment rights within the main residence itself. Simply put, there is no true basis in the record to

support a finding that Matlock could claim Borden's curtilage rights as his own.

In fact, Matlock's alleged status as a tenant in the shed inherently defeats even Borden's curtilage rights. The whole basis behind the curtilage doctrine is that the extended property may be treated as part of the home itself. If Matlock was indeed a tenant and possessed individual privacy rights within the shed, then in no way could Borden associate the shed as part of his home, thus defeating the notion that the area is curtilage to his property. Matlock himself asserts that as a tenant he enjoyed certain expectations of privacy exclusive from Borden. So it stands to reason that either Matlock is a tenant on Borden's property and enjoys Fourth Amendment protections associated with a residence, or he is not and was present within Borden's curtilage. Either way, he has no standing to assert Borden's curtilage rights.

### 2. Deputy Richerson was legally on the premises.

Then assuming Matlock is correct and was in fact a tenant on the property as an independent resident, we see no basis for challenging whether Deputy Richerson was legally on the premises. Generally, the approach to the main entrance of a residence is a properly "invadable" area because it is open to the public.[12] And it would then stand to reason that Deputy Richerson approaching the shed and conducting a "knock and talk" was perfectly legal.

---

[12] *See Quintana,* 276 S.W.3d at 758.

Matlock protests and argues that the ability to approach the front door is not absolutely considered invadable curtilage.[13] Essentially, he claims that the shed's status behind Borden's home and the time of day renders Deputy Richerson's presence at the front door unreasonable. It is a fairly consistent principle of Kentucky law that law enforcement may approach a home and knock without a warrant.[14] Deputy Richerson was at the scene to confront Bowles and was suspicious that criminal activity was afoot. We see nothing inherently unreasonable in approaching the shed in attempt to corroborate Bowles's story.

### 3. *Borden's consent to the search.*

As a final argument, Matlock challenges the validity of Borden's consent to search the shed. In *Schneckloth v. Bustamonte*, the Supreme Court categorically held that consent is a recognized exception to the Fourth Amendment's warrant requirement.[15] And to elaborate, this ability to consent by someone possessing common authority or another sufficient relationship over the premises may be valid against a non-consenting person with whom that authority is shared.[16]

When Matlock, Peay, and Tishner answered the door, Deputy Richerson immediately smelled methamphetamine in the shed. But at that time, he chose

---

[13] *See Dunn*, 480 U.S. at 301 (areas like the front door frequently do not carry an expectation of privacy "unless obvious steps are taken to bar the public.").

[14] *See Maloney v. Commonwealth*, 489 S.W.3d 235 (Ky. 2016).

[15] *See* 412 U.S. 218 (1973).

[16] *See United States v. Matlock*, 415 U.S. 164 (1974).

not to seek a search warrant for the shed. Instead, he awoke Borden and obtained his consent to search the unit. Matlock argues that as an individual residence with his own expectation of privacy, Borden could not consent to the search. We agree with the trial court that the search was legal.

First, if the shed is in fact Borden's curtilage, this issue is a non-starter. If he felt the shed was an extension of his home, he would undoubtedly possess common authority over the unit and would be perfectly able to consent to a search. So under that aspect of Matlock's case, there can be no question of valid consent.

But alternatively, if the shed is not Borden's curtilage and is Matlock's residence, he argues that Borden may not authorize or consent to a search of the property. And indeed, the Supreme Court has held that a warrantless search based on consent of a landlord is illegal.[17] So Matlock argues that Borden was powerless to allow Deputy Richerson inside the shed.

But in *Illinois v. Rodriguez*, the Supreme Court extended the common-authority doctrine beyond those with actual authority to third parties "whom the police, at time of entry, reasonably believe to possess common authority over the premises, but who in fact does not do so."[18] At the time, Deputy Richerson had no reason to believe anyone lived in the shed as an independent residence and sought consent from the property owner whom he reasonably

---

[17] *Chapman v. United States*, 365 U.S. 610 (1961).

[18] 497 U.S. 177, 179 (1990).

10

believed had the ability to consent to the search. So we are confident Deputy Richerson acted reasonably under the circumstances.

### III. CONCLUSION.

For the foregoing reasons, we affirm Matlock's convictions and sentence in circuit court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General