RENDERED: JULY 18, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0817-MR

COMMONWEALTH OF KENTUCKY            APPELLANT

v.      APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOHN GRISE, JUDGE
ACTION NO. 21-CR-01123

BUDDY HOPKINS SLAUGHTER            APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

CALDWELL, JUDGE: The Commonwealth of Kentucky ("the Commonwealth")
appeals from an order partially granting a motion to suppress. We reverse and
remand for further proceedings.

## FACTS

Buddy Hopkins Slaughter ("Slaughter") was charged with criminal
offenses including trafficking marijuana following a traffic stop in Bowling Green.

According to the uniform citation, a Warren County sheriff's deputy stopped Slaughter because he "was observed using his cell phone and sitting when the light was green and was not wearing a seat belt." The citation also stated that the deputy smelled marijuana when he spoke to Slaughter and asked Slaughter if the vehicle contained marijuana, and Slaughter admitted to having marijuana in a car door pocket. The citation further recounted the deputy found out Slaughter had an arrest warrant for failure to appear in Christian County on charges of trafficking in marijuana. The citation also stated Slaughter had large amounts of cash and rolling papers in his pants pockets, two small bags of marijuana were found in a vehicle door pocket, and Slaughter "did advise" there was approximately a pound of marijuana in the trunk.

Slaughter was arrested and later indicted for possession of drug paraphernalia, failure to maintain required insurance, use of personal communication device while driving, failure to wear a seatbelt, and trafficking in marijuana, over eight ounces but less than five pounds, first offense.

Slaughter filed a motion to suppress, by counsel, in the Warren Circuit Court ("the trial court"). He requested that the trial court suppress all statements made by him and all evidence seized from him or his vehicle due to alleged violations of his Fourth Amendment rights.

The trial court held a hearing on the motion to suppress. Former Warren County Sheriff's Deputy Ben Durling ("Deputy Durling"), who initiated the traffic stop at issue, testified. Deputy Durling testified he smelled marijuana when he walked up to Slaughter's vehicle, he asked Slaughter if there was marijuana in the car, and Slaughter said yes. Deputy Durling said he asked Slaughter to tell him where the marijuana was without reaching for it and, when Slaughter started to reach for something while stating there was marijuana in a door pocket, Deputy Durling pulled Slaughter out of the car and explained he needed to pat him down to check for weapons. Deputy Durling also testified to removing a large wad of money from Slaughter's pants pockets so he could perform an effective pat down and to finding rolling papers in Slaughter's pants pockets.

Deputy Durling recounted that after pulling Slaughter out of his car to pat him down, he put Slaughter in the back of the police cruiser due to Slaughter's reaching and to allow a probable cause search of the vehicle. He testified he did not handcuff Slaughter or put him under arrest at that time. Then, according to Deputy Durling's testimony, while Slaughter was sitting in the police cruiser, Deputy Durling found out Slaughter had an arrest warrant in Christian County for failure to appear on a trafficking marijuana charge. However, Deputy Durling testified to waiting to arrest Slaughter until backup arrived.

Deputy Durling further testified that, while Slaughter sat in the cruiser, Deputy Durling discovered two small bags of marijuana in a door pocket of Slaughter's car. Explaining he tried to avoid damaging vehicles, Deputy Durling recounted going back to the police cruiser next to talk with Slaughter and encouraging Slaughter to work with him. He testified to asking Slaughter if there was more marijuana in the car and to Slaughter's saying there was a bag with marijuana in it in the trunk. Next, he asked if Slaughter would object to his looking in the trunk, and Slaughter replied he would not, according to Deputy Durling's testimony. Deputy Durling then recounted looking in the trunk and finding a duffel bag with about a pound of marijuana in it.

On cross-examination, Deputy Durling admitted he did not usually pull people out of their cars when performing traffic stops for violations such as using a cell phone while driving. He also admitted he did not state he pulled Slaughter from the car due to reaching in the uniform citation or in his preliminary hearing testimony. He explained he did not always include all details in reports.

He clarified that Slaughter first mentioned marijuana while still seated in his own car, during the initial conversation which occurred immediately after the vehicle was pulled over. He noted this first mention of marijuana was in response to Deputy Durling's stating he noticed the smell of marijuana and asking Slaughter if there was marijuana in the car.

Slaughter admitted he did not read Slaughter his *Miranda*[1] rights when putting him into the police cruiser. Slaughter explained he did not Mirandize Slaughter then because he did not perceive putting Slaughter in the cruiser to be placing him in custody since Slaughter was not formally placed under arrest or handcuffed. According to Deputy Durling, he first placed Slaughter in custody after the vehicle search was completed and after finding out Slaughter had the arrest warrant for failing to appear in Christian County. Deputy Durling indicated he had to check his notes to see if he searched the trunk after backup arrived or beforehand. He admitted to not seeking a warrant to search the trunk.

On re-direct, Deputy Durling stated Slaughter was cooperative. He also said Slaughter never requested an attorney or requested that any areas of the vehicle not be searched.

The trial court judge asked Deputy Durling why he did not seek a warrant to search the trunk. Deputy Durling said Slaughter identified where the marijuana was and consented to a search of the trunk while seated unhandcuffed in the back of the cruiser. Deputy Durling admitted that Slaughter did not appear to be under the influence when he pulled Slaughter over and he did not think Slaughter had been smoking before the stop. Deputy Durling stated he smelled

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

green marijuana,[2] rather than burnt marijuana, when he spoke with Slaughter – although he did not note this detail in his report according to his usual practice.

After Deputy Durling's testimony concluded, the trial court heard argument from both parties' attorneys. The trial court judge orally stated he did not perceive a need to suppress Slaughter's initial statements made when he was pulled over or the evidence found when Deputy Durling patted Slaughter down and looked in the door pocket (*i.e.*, the rolling papers and two small bags of marijuana). However, the judge indicated he thought it was a closer call about the statements Slaughter made in the police cruiser and the marijuana found in Slaughter's trunk.

The trial court judge also orally stated he perceived that Slaughter was in custody when placed in the cruiser because a reasonable person would not feel free to leave in this situation (especially since one could typically not open the door from inside the backseat of a police cruiser). The judge also orally expressed concerns about no warrant being requested before the search of Slaughter's trunk – especially since Slaughter was unable to get into his own vehicle and drive away after being placed in the police cruiser. The judge invited both parties to submit memoranda of law about the suppression issue, which they did.

---

[2] *See Deatley v. Commonwealth*, No. 2002-CA-000230-MR, 2004 WL 1225424, at *1 n.6 (Ky. App. Jun. 4, 2004) (unpublished) ("According to Agent Fegan's testimony during the suppression hearing, 'green marijuana' is marijuana that has not been burned in any capacity.").

Shortly after submission, the trial court issued an order partially granting Slaughter's motion to dismiss, stating:

> THE COURT ORDERS that all statements of the defendant [Slaughter] made *after* he was pulled from the vehicle and placed in the cruiser are HEREBY SUPPRESSED and the marijuana found in the trunk as a result of the custodial interrogation and the warrantless search is likewise SUPPRESSED.  The statements of the defendant made prior to that point, and the evidence, including the two bags of marijuana found in the door and the money found in the defendant's pockets, are NOT SUPPRESSED.

(Emphasis in original.)

The Commonwealth filed a timely appeal, challenging the trial court's suppression of the marijuana found in the trunk of Slaughter's vehicle.[3]  Further facts will be stated as necessary in our analysis.

## ANALYSIS

### Standard of Review

We review the trial court's factual findings for clear error, meaning such findings will not be disturbed if supported by substantial evidence.  However, we review the trial court's application of the law to the facts *de novo*.  *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015).

---

[3] To be clear, we do not reverse the trial court's suppression of the statements made by Slaughter after his placement in the police cruiser because the Commonwealth has not alleged error in the trial court's resolution of this specific issue on appeal.

**Trial Court Erred in Suppressing the Marijuana Found in Car Trunk**

The Fourth Amendment protects against unreasonable searches, and warrantless searches are considered unreasonable unless a recognized exception to the warrant requirement applies. *Gasaway v. Commonwealth*, 671 S.W.3d 298, 316 (Ky. 2023). Moreover, the Commonwealth bears the burden of showing that a warrantless search was constitutionally valid. Keeping in mind that each recognized exception to the warrant requirement is "conceptually distinct," the Commonwealth must prove every element of a recognized exception to defeat a motion to suppress evidence obtained during a warrantless search. *Id.*

Interestingly, the parties' briefs focus on two different exceptions to the warrant requirement. Slaughter argues the trial court properly suppressed the marijuana found in the trunk pursuant to United States Supreme Court precedent regarding the search incident to arrest exception – namely *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Slaughter quotes *Gant*, 556 U.S. at 351, which states: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." And in his appellee brief he argues:

> Here, Mr. Slaughter was physically removed from his
> vehicle and placed securely in a police cruiser. As a
> result, there was no possibility that the Appellee
> [Slaughter] could have gained access to the vehicle to

destroy evidence or to access a weapon. He was not within reaching distance of the trunk, so the warrantless search was not permissible and there are no exceptions which would justify a warrantless search.

In contrast, the Commonwealth discusses a different exception to the warrant requirement – the automobile exception. It argues that the trial court erred in failing to deny the suppression motion because the required elements of the automobile exception to the warrant requirement were satisfied.

As recently stated by our Supreme Court: "The automobile exception to the warrant requirement applies when the vehicle is readily mobile and probable cause exists to believe evidence of criminal activity may be contained in the vehicle." *Gasaway*, 671 S.W.3d at 316 (citing *Hedgepath v. Commonwealth*, 441 S.W.3d 119, 128 (Ky. 2014)).

"A vehicle is considered readily mobile even if it has been secured by law enforcement or there is little to no risk a suspect or his accomplices could access the vehicle." *Gasaway*, 671 S.W.3d at 316-17 (citing *Hedgepath*, 441 S.W.3d at 128). And importantly, the automobile exception does not require a separate finding of exigent circumstances in part because of the reduced expectations of privacy in a vehicle as opposed to a home. *Gasaway*, 671 S.W.3d at 317. *See also Hedgepath*, 441 S.W.3d at 127. So, in sum, the automobile exception may be invoked if a vehicle is readily mobile (*i.e.,* being used on the highways or capable of such use though temporarily stationary) and probable cause

exists to believe there is evidence of criminal activity or contraband in the vehicle. *Gasaway*, 671 S.W.3d at 316-17. *See also Hedgepath*, 441 S.W.3d at 128.

Although the trial court did not explicitly discuss the automobile exception or any exception other than "exigent circumstances" in its Order, the Commonwealth clearly argued to the trial court that the automobile exception to the warrant requirement applied here. Furthermore, in its memoranda of law filed with the trial court, the Commonwealth cited binding precedent to the trial court holding that the mere smell of marijuana emanating from a vehicle stopped for a traffic violation establishes probable cause to search the entire vehicle under the automobile exception. *See Greer v. Commonwealth*, 514 S.W.3d 566, 568 (Ky. App. 2017) (citing *Dunn v. Commonwealth*, 199 S.W.3d 775, 776 (Ky. App. 2006))[4] ("Once the officer smelled the marijuana coming from the car, he had probable cause to search the vehicle and all of its contents."). *See also Estep v. Commonwealth*, 663 S.W.2d 213, 215 (Ky. 1983) (citing *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982)) ("where probable cause justifies the search of a lawfully stopped vehicle, it also justifies the search of

---

[4] In *Dunn*, the defendant conceded "that the odor of marijuana coming from the car he was driving furnished Fuller with probable cause to search the car." 199 S.W.3d at 776. The issue in dispute in *Dunn* was whether there was also probable cause to search the defendant's person. *See id.* at 776-77.

every part of the vehicle and its compartments and contents that may conceal the object of the search").

Despite the Commonwealth's invoking the automobile exception and citing to appropriate authority to support its opposition to the motion to suppress, the trial court granted the motion to suppress regarding the marijuana found in the trunk. In so doing, the trial court stated the exigent circumstances exception to the warrant requirement did not apply because Slaughter was in custody in the back of a police cruiser and was unable to flee when the car trunk was searched. But the automobile exception does not require a separate finding of exigent circumstances and instead is satisfied when there is probable cause to believe the vehicle contains evidence of criminal activity and the vehicle is readily mobile. *Gasaway*, 671 S.W.3d at 316-17; *Hedgepath*, 441 S.W.3d at 127-28.

The trial court misapplied the law in not applying the automobile exception to the warrant requirement despite implicitly finding there was probable cause to believe there was evidence of criminal activity in Slaughter's car and not finding any reason why Slaughter's car was not readily mobile. The trial court order simply stated the deputy's discovery of two small bags of marijuana in the vehicle door pockets was "appropriate" and this evidence would not be suppressed. The trial court's Order does not clearly explain its reasoning for not suppressing the marijuana found in the vehicle door pockets. However, in refusing to suppress

this evidence, it appears the trial court implicitly accepted that there was probable cause to suspect there was evidence of criminal activity in the vehicle – based on the smell of marijuana and Slaughter's initial statements admitting there was marijuana in the vehicle door pockets as found by the trial court.[5]

The trial court also seemingly accepted that the vehicle was readily mobile, making no findings the car was not operable, stating it had no problem with police searching the vehicle door pocket, and refusing to suppress evidence of the two small bags of marijuana found in the door pocket. However, the trial court suppressed evidence of the marijuana in the trunk (as well as statements made by Slaughter in the police cruiser) based on concerns that Slaughter was improperly subjected to custodial interrogation before he was read his *Miranda* rights.

Certainly, the trial court expressed legitimate concerns that Slaughter was not read his *Miranda* rights when he was pulled out of his car, placed in the

---

[5] In contrast to the lack of explicit explanation for not suppressing evidence of the marijuana found in the vehicle door pockets, the trial court clearly stated its reasoning for not suppressing the evidence found in Slaughter's pants pockets – *i.e*., the search of his pants pockets being reasonable to assure the deputy's safety. Despite much of its written Order focusing on whether Slaughter was in custody when placed in the cruiser, the trial court also succinctly stated:

> Prior to placing him in the cruiser, Deputy Durling searched the defendant's [pants] pockets and found a large amount of cash and some rolling papers. This search was reasonable to assure officer safety, and the discovery of the contents of the pockets was not the result of an illegal search or interrogation. Furthermore, the deputy then obtained two small bags of marijuana from the driver's door pocket, and this evidence was also appropriate and will not be suppressed.

(Page 2 of Order, R, p. 65.)

police cruiser, and questioned about whether there was more marijuana in Slaughter's car in addition to that in the door pocket. The court also stated it perceived that the trunk was searched based on Slaughter's stating there was marijuana in the trunk after he was placed in the police cruiser.

However, the Commonwealth correctly argues that even disregarding Slaughter's statement made in the cruiser, law enforcement had the authority to search the entire car under the automobile exception based on probable cause the vehicle contained contraband and the car's ready mobility. *See Estep*, 663 S.W.2d at 215; *Greer*, 514 S.W.3d 568.

Moreover, the fact that Slaughter was unable to access his car when the trunk was searched does not mean the automobile exception cannot apply since there was probable cause to believe the vehicle contained evidence of criminal activity and the automobile was readily mobile. In fact, our Supreme Court rejected an argument that the automobile exception could not apply since the defendant could not access the vehicle due to being placed under arrest in *Chavies v. Commonwealth*, 354 S.W.3d 103, 110-12 (Ky. 2011).[6]

Our Supreme Court explained a vehicle's ready mobility did not depend on the defendant's having access to it. It further noted the ready mobility

---

[6] *Chavies*, 354 S.W.3d 103, *was abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015), *as modified on denial of rehearing* (May 5, 2016), *and as corrected* (Nov. 14, 2016).

of a motor vehicle was an exigent circumstance, making it unnecessary to make an independent showing of additional exigent circumstances to satisfy the automobile exception. *Id*. at 111. So, assuming there was probable cause to believe a readily mobile vehicle contained evidence of contraband, law enforcement could properly search the entirety of that vehicle (even areas not in plain view) without a warrant under the automobile exception – despite the defendant's being unable to access the vehicle at the time of the search. *Id*. at 111-12.

In sum, we agree with the Commonwealth that the trial court erred in suppressing evidence of the marijuana found in the trunk. Despite Slaughter's lack of access to his vehicle while he was placed in the police cruiser, the vehicle was still readily mobile (as shown by Slaughter's driving it immediately before the traffic stop and the lack of any evidence the vehicle was inoperable afterward). Also, there was probable cause to believe the vehicle contained contraband or evidence of criminal activity – as the trial court implicitly accepted in stating the search of the vehicle door pockets was not illegal after finding the deputy smelled marijuana and Slaughter admitted there was marijuana in the vehicle door pocket when initially pulled over. The elements of the automobile exception were satisfied and there was probable cause to support a search of the entire vehicle, including the trunk.

Moreover, we reject Slaughter's argument that evidence of the marijuana in the trunk should be suppressed based on *Arizona v. Gant*, 556 U.S. 332. As our Supreme Court pointed out in *Rose v. Commonwealth*, 322 S.W.3d 76 (Ky. 2010), the United States Supreme Court recognized that: "when considering the constitutionality of a vehicle search incident to the arrest of a recent occupant, a court may find the search constitutional even where the arrestee is secured if 'it is reasonable to believe *evidence relevant to the crime of arrest might be found in the vehicle.*'" *Id.* at 80 (quoting *Gant*, 556 U.S. at 335).[7] So, in essence, despite the fact Slaughter was secured away from his vehicle when the search of the trunk was conducted, the search was constitutional so long as it was reasonable to believe evidence relevant to the crime of arrest could be found in the vehicle. And unlike *Rose*, 322 S.W.3d at 80, it was reasonable to believe evidence relevant to the crime of arrest (*i.e.*, trafficking of marijuana) could be found in the vehicle here as the trial court obviously accepted.

In short, the trial court erred in suppressing evidence of the marijuana found in Slaughter's trunk. Further arguments made in the briefs have been determined to lack merit or relevancy to our resolution of this appeal.

---

[7] *Gant*, 556 U.S. at 335, was quoted with emphasis added in *Rose*, 322 S.W.3d at 80.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the trial court's suppression of evidence of the marijuana found in Slaughter's trunk and we **REMAND** for further proceedings in conformity with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:

Russell Coleman
Attorney General

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Stephanie Ritchie Mize
Clarksville, Tennessee